# CHARLESTON.

## PROUDFOOT *v.* CLEVENGER.

### *(GREEN, J., Absent.)

Submitted September 10, 1889.—Decided November 20, 1889.

1. DEMURRER TO EVIDENCE—SUPREME COURT OF APPEALS—NEW TRIAL—DAMAGES—MOTION—PRACTICE.

   Where a case is decided upon a demurrer to evidence, the judgment will be reviewed by this Court upon such demurrer to evidence, though there was no motion made in the trial-court for a new trial. But, where the ground for a new trial is excessive damages, this rule does not apply, as in that case there must be a motion in the trial-court for a new trial.

2. ADMINISTRATORS AND EXECUTORS—PROMISSORY NOTES—SURETY—MISTAKE.

   An administrator, with money of his decedent, pays on a note made by his decedent, as principal, with sureties, an amount in excess of the sum applicable out of the assets to that debt, under the mistaken belief that he was surety in such note, and that the estate would pay a somewhat larger *per cent.* of its liabilities than it did. He brings in his own name an action of *assumpsit* against a surety to compel the surety to refund the amount so paid in excess of the ratable share of the assets applicable to such debt. He can not recover of the surety.

*Dayton & Dayton* and *J. J. Davis* for plaintiff in error.

*J. H. Woods* and *S. V. Woods* for defendant in error.

BRANNON. JUDGE:

Action of *assumpsit* in the Circuit Court of Barbour county, brought by Chester W. Proudfoot in his individual right against John C. Clevenger, in which there was a jury, a demurrer to the evidence by defendant, a verdict finding for the plaintiff $872.52, subject to such demurrer, a judgment upon such demurrer for the plaintiff against the defendant for that amount, and a writ of error sued out by defendant, Clevenger.

It is urged by appellee's counsel that as no motion to set aside the verdict and grant a new trial was made in the trial-court, the appellant can not have his demurrer to the evi-

*On account of illness.

dence considered by this Court. For this proposition we are referred to *Riddle* v. *Core*, 21 W. Va. 530; *Brown* v. *Brown*, 29 W. Va. 777 (2 S. E. Rep. 808.) In *Brown* v. *Brown* it was held that where exceptions are taken during trial to the action of the court in giving or refusing instructions, or in admitting or rejecting evidence, unless a motion is made for a new trial in the trial-court the exception will be treated as waived by this Court. In *State* v. *Phares*, 24 W. Va. 657, it was broadly laid down that in a case tried by a jury, no matter how many exceptions are taken to rulings of the court during the trial, unless a motion is made to set aside the verdict, and it is overruled, all such errors saved will by the appellate court be deemed as waived. But that is where there has been in fact a verdict on the evidence by the jury, and ought not to apply to a case where the case is taken from the jury, and passed on by the court, and where the verdict is simply a finding conditional entirely upon the decision of the court upon the demurrer to evidence.

The reason given for the position held in *State* v. *Phares* is that the party who complained of the rulings, by not asking a new trial, waived his exception; that, if he had insisted upon it by asking a new trial, the error might have been cured by granting a new trial; but in a case of demurrer to evidence it can not be so said, for by averring, as he does by his demurrer, that the evidence will not sustain his adversary's action or defence, he certainly does that which, had there been no demurrer, but a verdict, is equivalent to saying that the evidence is insufficient, and therefore a new trial is asked. Therefore this doctrine obviously does not apply to a case decided upon a demurrer to evidence. The case of *Riddle* v. *Core, supra,* and *Humphrey* v. *West,* 3 Rand. (Va.) 516, on which the doctrine contended for is largely based, were both cases of demurrer to evidence; but note that in them the ground of complaint was excessive damages, and where, though the case be decided on a demurrer to evidence, the party complains of excessive damages, he must ask a new trial below, for there is no reason why in that case the rule above adverted to should not apply.

Considering, then, the demurrer to evidence, was the case

properly decided upon it by the Circuit Court? We think not. Wait M. Corder as principal, and J. D. Corder and J. C. Clevenger as his sureties, made a note for $2,000.00 to the First National Bank of Grafton. Wait M. Corder died, and the plaintiff, Proudfoot, qualified as his administrator on 2d October, 1882, and on October 5, 1882, he paid as administrator on this note $1,027.43, and at several times later, in 1883 and 1884, paid interest, his aggregate payments being $1,092.43, leaving $1,000.00 unpaid; and afterwards said administrator paid the bank on the note $485.50, which he claims is the amount of the assets of Wait M. Corder's estate applicable on the balance of that debt, the estate only paying 44.47 *per cent.* on its liabilities. The bank demanded payment of the balance of Clevenger, the other surety being insolvent; and on October 15, 1885, he paid $555.30, balance of the note. Proudfoot claims that the share of the assets, as shown by administration and its adjustment in a suit involving the assets, going to this debt, was $485.80, and that thus he paid $694.02 too much, and that Clevenger should refund it to him. He says in his evidence that he paid under two misapprehensions—one, that the estate would pay at least fifty cents on the dollar; the other, that he was a surety on the note, when in fact he was not. There is no conflicting evidence; the facts are indisputable. When Proudfoot made this payment, he did so at his own suggestion, without any request from Clevenger, and because he thought he was surety. Viewed as a stranger, he could not recover. A stranger paying the debt of another, without request, can not sustain a suit therefor. *Neely* v. *Jones*, 16 W. Va. 625, 635.

It can not be said that Clevenger, by paying the balance left of the note after crediting payments so made by Proudfoot, adopted and ratified such payments, and thus became liable to refund; for it does not appear that he knew who had made the payments. The bank wrote him for payment in one letter, saying the note was subject to two credits, amounting to $1,444.70, without further explanation, and in the other letter simply saying there was a certain balance due, and he sent his son and paid it. But suppose he knew that Proudfoot, as administrator, had paid them. The pay-

ments coming thus from the estate, from Proudfoot as administrator, not as an individual, it could not be said with any reason that by paying the balance he ratified a stranger's payment—a payment by Proudfoot as an individual and in his own right—when he had paid and taken receipts as administrator. There is no colorable reason for saying that when Clevenger paid this balance he knew that Proudfoot had paid more than the estate's assets would pay on the debt.

But there is another forcible fact against the plaintiff. When Corder died he had on deposit in the Farmers' Bank of Phillippi $2,000.00, and Proudfoot, as administrator, drew a check on this fund payable to the cashier of the First National Bank of· Grafton for $1,030.00, to be applied on said note. Thus he used the funds of the estate in paying, and of this there is no dispute. And thus the assets discharged the debt *pro tanto*, and it was thereafter only a question between the administrator and creditors as to the proper application of its assets; certainly not between him and Clevenger, the surety. Certainly a surety can take the benefit of assets actually applied on the debt for which he is bound, though other creditors might suffer, or the administrator be liable to them for misappropriation, or though the particular creditor might have to refund. He can not claim that he was materially mistaken as to the solvency of the estate, for his own evidence shows that when he made the first payment he expected it would pay fifty *per cent.* on its debts only. So he was not materially mistaken as to that, as it did pay 44.47 *per cent.* But he had means to know as to the assets, and any mistake would not charge a surety to refund after his principal's actual assets had made a payment. *Shriver* v. *Garrison,* 30 W. Va. 456 (4 S. E. Rep. 660.) There overpayment to a legatee could not be recovered. A surety certainly would stand in as good a plight. We think that the case decided by the Supreme Court of Massachusetts (*Paine* v. *Drury,* 19 Pick. 400) holds correct doctrine, namely:

" Where an executor, supposing the estate of his testator to be solvent, paid in full a debt due from the estate, it was held that he could not, upon such estate proving to be insol-

vent, recover any portion of the sum so paid from a surety of the testator, it not having been paid at the request of the surety, although, if the executor had not paid it, the surety would have been compelled to do so, and would have had his remedy over against the estate for a dividend only."

Here the administrator was not materially mistaken as. to the estate's insolvency but as to the fact that he was not a surety. He ought to have known as to that, and, even if he had not paid assets of the estate, he could not for this mistake hold the surety responsible, even if he could hold the creditor. *Lewellen* v. *Garrett,* cited by appellee, 58 Ind. 442, was simply where a party paid a note under the mistaken belief that he had executed it, and was allowed to recover it back—that is, of the creditor; but that does not apply to show that he could have recovered of a surety. " Sureties are never held responsible beyond the clear and absolute terms and meaning of their undertakings, and presumptions and equities are never allowed to enlarge or in any degree to change their legal obligations." Opinion, *Bank* v. *Good,* 21 W. Va. 464. A surety is a favorite of the law, and a claim against him is *strictissimi juris.* Brandt, Sur. § 79. Even where an executor, in ignorance of the true state of assets, is under a mistake as to their sufficiency, he can not recover a payment made to a legetee. *Shriver* v. *Garrison,* 30 W. Va. 456, (4 S. E. Rep. 660.)

The judgment of the Circuit Court is reversed, with costs to appellant, and this Court. now rendering such judgment as that Court should have rendered, is of opinion that the law upon the demurrer to the evidence is for the defendant, and sustains the same; and it is therefore considered that the plaintiff take nothing by his suit, and that the defendant recover of the plaintiff his costs in his defence in the Circuit Court expended.

REVERSED.