### ADLER v. GERMANIA FIRE INS. CO.

(Supreme Court, Appellate Term, First Department. June 22, 1896.)

1. INSURANCE—DIVISIBLE CONTRACT—BREACH OF CONDITION.
   A policy for separate amounts on a stock of goods, and store fixtures, is a divisible contract; and a mortgage subsequently given on the fixtures avoids the policy only as to them, and not as to the stock of goods, under a clause that the entire policy shall be void "if the subject of insurance * * * be or become incumbered by a chattel mortgage."

2. ESCROW—WHAT CONSTITUTES—MORTGAGE.
   A chattel mortgage executed to secure notes given by the mortgagor, pursuant to a demand by the mortgagee for security, was delivered to the attorney of the mortgagee, and on the same day it was sent to the mortgagee, and a copy was immediately filed in the register's office. The mortgagee retained the original until after the destruction of the mortgaged chattels by fire, when he made a demand for the insurance money. *Held*, that there was a complete delivery of the mortgage, and not a delivery in escrow.

Appeal from city court of New York, general term.

Action by Harris B. Adler against the Germania Fire Insurance Company to recover under a policy of fire insurance. A judgment for $1,020.09 damages and costs, entered on a verdict in favor of plaintiff, and an order denying a motion for a new trial, were affirmed by the city court (37 N. Y. Supp. 207), and defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Ernest Hall, for appellant.

J. L. Weinberg, for respondent.

PER CURIAM. The defendant, by its policy issued May 1, 1892, and thereafter continued and renewed for one year from May 1, 1893, to May 1, 1894, insured plaintiff's assignor against loss or damage by fire in the sum of $2,000, as follows:

"$1,400 on stock of drugs and medicines and other merchandise, hazardous and extrahazardous. $600 on store and gas fixtures, including soda fountain and connections, show cases, counter, shelving, drawers, mirrors, clock, glass signs, bottles, glassware, paper on walls and ceilings, implements, utensils, including signs attached to outside of building."

The premises were located at No. 19 Canal street, this city. On October 23, 1893, the plaintiff's assignor, Samuel Zipris, mortgaged the fixtures to one Solomon Mosesson to secure the payment of

$477; being the amount of 12 promissory notes, for $39.75 each, payable one on the 1st day of each and every month until the entire sum should be paid. The mortgage was filed in the office of the register of the city and county of New York October 24, 1893, was unsatisfied of record, and appeared as an incumbrance upon the property at the time of the fire, although it was claimed by the plaintiff to have been satisfied the day after it was executed, having been given as a temporary security pending the delivery of indorsed notes for the loan which it secured. On November 26, 1893, fire broke out on the premises containing the insured property. Part was damaged, and part destroyed. The policy contains the following condition:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; * * * if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage. * * *"

In Merrill v. Insurance Co., 73 N. Y. 452, the insurance covered 14 different items; and it was held that where a policy was made upon separate and distinct classes or species of property, each of which is separately valued, and the sum total of the valuations is insured on payment of premium in gross, the contract is severable, and a breach of the condition avoiding the policy as to one of the items does not affect it as to the others, notwithstanding that the policy contained a provision that if the condition were broken the policy should be void. The provision in the policy in the case at bar is that if the condition be broken the "entire" policy shall be void, and the question is whether the use of that word works a different result, and avoids the policy as to all the separate classes of property, though the condition be broken as to only one class. It was held by the court of common pleas in American Artistic Gold Stamping Co. v. Glens Falls Ins. Co., 20 N. Y. Supp. 646; and by the supreme court, Third department, in Knowles v. Insurance Co., 21 N. Y. Supp. 50, that it did not. But the contrary was adjudged in Kiernan v. Insurance Co. (Sup. Ct., Fifth Dept.) 72 Hun, 519, 25 N. Y. Supp. 438.[1] In the last case the court said that:

"The word 'entire' has no significance in the contract, unless it be held that mortgaging a part of the insured property makes it wholly void; for, if the entire property insured be mortgaged, of course, the policy is wholly void, and in such case the use of the word 'entire' would have no significance. It has no meaning in the contract unless it be construed as making the policy void in toto in case a part only of the property insured be mortgaged."

And the court disagreed with the opposite conclusion reached by the Third department and by the common pleas. We do not think it so clear that the word "entire" has no significance in the contract, unless it be held to apply to all the insurance upon all the different risks in the policy, and to intend that mortgaging a part of the insured property makes all the insurance under the policy void. In the first place, it requires us to assume that the insurer,

[1] See decision of this case on reargument, 30 N. Y. Supp. 892.

by the use of the word "entire," intended to refer to the whole instrument, which could not be, if the policy is in law not an entire, but a divisible, contract. In the Merrill Case, above stated, the court of appeals says of a policy like the present, insuring different classes of goods for different sums:

"The contract before us is not entire; it is divisible; and the breach of the condition made by the plaintiff applied only to the class of property insured, which was the immediate subject of the act of incumbrance which constituted that breach."

It is not within the power of the insurer to make a divisible contract an entire contract by calling it so, and we must seek an intention agreeable to the kind of contract which he was actually making; that is to say, a policy embracing more than one subject, and entire as to each subject. That intention, we think, is quite manifest. It will be observed that the provision in which the words "this entire contract" occur refers to the "subject of insurance" becoming incumbered by chattel mortgages. The "subject of insurance," in a policy insuring separate risks, means the subject of each separate risk, as to each of which there is, under the cases, a divisible contract or policy; and the provision that the entire policy would be void if the subject of insurance becomes incumbered means that the whole insurance upon that particular subject or risk should be so affected. A portion only of the goods separately insured might be mortgaged, but under this clause, avoiding the entire policy in case the subject of insurance be mortgaged, the insurer provided that the entire insurance upon all the goods in that class should be void, though only a part were mortgaged. As to each class of insurance the policy is entire, and not otherwise, and the insurer must be deemed to have had that legal distinction in view when employing the term under consideration. Had it been the intention of the insurer to provide that all the insurance on all the risks named in the policy should be affected by an incumbrance of the property covered by any one risk, appropriate language could have been employed, as in Smith v. Insurance Co., 118 N. Y. 518, 23 N. E. 883, where the policy provided that if the property, or any part thereof, should be incumbered, it must be so represented in the application, otherwise the entire policy, and every part thereof, should be void. That policy was held not to be severable, because it "expressly provided that a misrepresentation of the situation of one of the subjects insured should invalidate the insurance on all the property covered by the policy." The condition of the policy before us shows no such provision, but, on the contrary, is confined by its own language to the subject of insurance incumbered by the chattel mortgage. As that subject of insurance was the fixtures, and they were incumbered, within the terms of the policy, the insurance as to them became void, and a recovery for loss on that account cannot be sustained. The verdict in this case appears to include such a recovery, and a new trial, therefore, will have to be ordered.

The plaintiff, appreciating the effect of the breach of condition contained in the policy, undertook to obviate it by oral evidence

introduced for the purpose of showing that the chattel mortgage never had efficacy as such, but was delivered in escrow, and never became operative. The theory was that Samuel Zipris, the plaintiff's assignor, applied to one Mosesson for a loan of $500; that Mosesson was willing to make it, provided he received Zipris' notes indorsed by London Bros., but Zipris could not obtain the indorsements that day, and gave the mortgage to Mosesson upon the understanding that if on the following day he delivered the indorsed notes the mortgage should be returned; that he obtained the required indorsements, and delivered the notes as agreed, and became entitled to a return of the chattel mortgage. This evidence given to avoid the effect of the chattel mortgage clearly established that the making of the chattel mortgage was more than a mere formal ceremony, that Mosesson declined to loan the money without security; that the mortgage was the security given, and that on the faith of it Mosesson advanced his money. True, the parties say that it was agreed that Zipris might on the following day substitute indorsed notes for the mortgage, but this did not alter the fact that until these notes were delivered the mortgage was a completely executed security, enforceable by the mortgagee, in case of default, in its terms. The trial judge left it to the jury to say whether the property was ever incumbered by the chattel mortgage, and charged that if the mortgage was delivered to the attorney in escrow, to be delivered on the following day, provided Zipris did not bring notes indorsed by London Bros., and that on the following day he did bring the notes, and he delivered them, the mortgage was not an incumbrance. And, that he might not be misunderstood, the judge said:

"Now, gentlemen, I want you to distinctly understand that it is within your power to determine whether this chattel mortgage was an incumbrance upon the property, from the evidence. If you do, find for the defendant; if not, find for the plaintiff."

Exceptions were separately taken to these instructions, which are fatal to the recovery. There was no delivery in escrow of the chattel mortgage. It was delivered in order to take effect as security immediately, and for that purpose only. It was delivered to the attorney of the mortgagee, and was sent to his client the same day. A copy was immediately filed in the register's office, although that was claimed to have been done by mistake; but we find that the mortgagee retained the original until after the fire, and actually made a demand thereunder for the insurance moneys. In addition to this, it appears that no indorsed notes were ever delivered, and so the mortgage remained in force. Mosesson did not ask for an escrow, nor would he have been satisfied with one; for he demanded security, and refused to part with his money until he had obtained the security. An escrow has no force until the condition is performed (Jackson v. Catlin, 2 Johns. 248; Clark v. Gifford, 10 Wend. 310; White v. Bailey, 14 Conn. 270); or as explained in Jackson v. Catlin, supra, at page 259, "A deed is delivered in escrow when the delivery is conditional; that is, when it is delivered to a third person to keep until something is done by the grantee." See, also,

White v. Williams, 3 N. J. Eq. 376. The mortgagee was to do nothing in this instance. He had already parted with his money on the faith of the mortgage, and it was his until indorsed notes were substituted for it. We do not decide that a delivery in escrow must always be until something is done by the grantee, for there may be exceptions to the rule. Raymond v. Smith, 5 Conn. 555. But we hold that nothing was left undone by either party to detract from, or impair the enforceability of, the chattel mortgage, from the time Mosesson advanced his money until the indorsed notes were substituted for the mortgage.

We do not agree with the appellant's claim that the plaintiff's right to recovery was affected by the fact that the sworn claim of the insured, after the loss, exceeded what was allowed upon the appraisement, under the provision of the policy against false swearing. Unger v. Insurance Co., 4 Daly, 96.

As the verdict embraces a recovery for the fixtures, as to which the policy became void by reason of the mortgage, the judgment must be reversed.

Judgment reversed, and new trial ordered, with costs of appeal in this court and the city court, and of former trial, to the appellant, to abide the event.