# CHARLESTON.

### BOND v. NATIONAL FIRE INSURANCE CO.

Submitted October 15, 1918.     Decided November 15, 1918.

1. INSURANCE—*Fire Insurance—Agents Agreement to Keep Property Insured—Effect.*

   An agreement between the insured and a general soliciting agent of fire insurance companies, that the latter will keep the property of the former insured up to a certain per cent. of its value, and renew the same when necessary, will not avoid a policy procured by such agent without the knowledge of the insured. Such an undertaking on the part of a general insurance agent is not incompatible with his duty to his principal. (p. 107).

2. SAME—*Fire Insurance—Other Insurance.*

   A condition attached to and forming a part of a fire insurance policy, providing that the insurer shall be liable for no greater proportion of any loss than the amount insured bears to 80% of the actual cash value of the property covered by the policy at the time of the loss, "nor for more than the proportion which this policy bears to the total insurance thereon," impliedly authorizes the insured to take other insurance on the property, not exceeding in all 80% of its cash value, notwith-

83 W. Va.

standing a printed condition in the policy avoiding it in the event other insurance is taken without the insurer's written consent added to or endorsed on the policy. (p. 109).

3. SAME—*Fire Insurance—Divisible Contract—Avoidance.*

A fire insurance policy covering different classes of property, separately valued, containing a condition or warranty relating to one class of property only, and not affecting the risk as to another, is a divisible contract, and is not avoided in its entirety because of a breach of such condition or warranty, notwithstanding a stipulation in the policy that it shall become void in toto upon a breach by the insured of any one of its conditions. (p. 110).

4. SAME—*Fire Insurance—Conditions of Policy.*

A fire insurance policy covering a sawmill and machinery and manufactured lumber stacked on the millyard, separately valued, containing a condition avoiding the entire policy, if the insured shall cease to operate the mill for more than thirty consecutive days, is rendered void only so far as it affects the insurance on the mill, by failure to operate for a period longer than that specified, without the written consent of the insurer. (p. 110).

5. APPEAL AND ERROR—*Judgment on Demurrer to Evidence—Review.*

A judgment rendered upon a demurrer to evidence, where no motion was made in the court below to set aside the verdict, will not be reversed by this court for excessiveness of the jury's verdict. (p. 113).

Error to Circuit Court, Tucker County.

Action by W. C. Bond against the National Fire Insurance Company of Hartford, Conn. Judgment for plaintiff, and defendant brings error.                    *Affirmed.*

*A. M. Cunningham, A. R. Stallings* and *W. K. Pritt*, for plaintiff in error.

*C. O. Strieby* and *D. E. Cuppett*, for defendant in error.

WILLIAMS, JUDGE:

Plaintiff recovered judgment in an action on a fire insurance policy covering a sawmill and lumber stacked on the millyard, and defendant has brought the case to this court, assigning numerous errors committed by the trial court. These alleged errors are comprehended in the three princi-

pal propositions on which defendant relies, viz.: (1) That W. E. Crooks acted as agent for both plaintiff and defendant in writing the policy which was an inconsistent relation and gave defendant the right to avoid the policy; (2) that plaintiff violated the promissory warranty against procuring other insurance on the property without the consent of the insurer; and (3) that he also violated the promissory warranty against suspension of the operation of the mill for more than thirty consecutive days without written permission.

The case was before this court on a former writ of error and is reported in 77 W. Va. 736. On the second trial the case was heard on a demurrer to plaintiff's evidence, defendant having offered no evidence whatever. The court overruled the demurrer to the evidence and entered judgment upon the conditional verdict.

As to defendant's first proposition, it appears from the testimony of the insured and W. E. Crooks, the insurance 'agent, that the former intrusted the latter with the business of placing insurance on his property, not to exceed 80% of its cash value and of renewing the same when necessary, without designating any particular insurance company to take the risk. Mr. Crooks was a general agent representing a number of insurance companies and did endeavor to keep plaintiff's property insured to the amount of 80% of its cash value. At the time of the loss the property was covered by a number of policies, three of which were written by defendant company and others by different other companies. Defendant contends that this agreement or arrangement constituted Crooks agent for both parties to the contract and rendered the policy voidable at its election for reasons of public policy. It is a very common practice for the insured to intrust to a general insurance agent the matter of keeping insurance on his property to a stipulated amount, and also, in case the agent represents more than one company, with the power of selecting the insurance company to take the risk. Mr. Crooks swears he frequently went to the lumber-yard and made careful estimates of the amount of lumber stacked thereon at the time of writing and

re-writing the insurance; that he would make actual meas-
urements of some piles of lumber and then count the number
of piles and by that means arrive at the quantity of lumber
on the yard, and that he also examined the scaler's book.
He thus ascertained the quantity of lumber about as nearly
as it could be done without actual measurement of it, and
says he aimed to keep the amount of insurance within the
limit of 80% of its value. His duty to the insurer necessar-
ily required him to estimate the value of the property be-
fore writing the contract. Crooks was not in anyway inter-
ested in the property nor was he a general agent of the in-
sured for any purpose. nor did he receive any compensation
from him for procuring the insurance. Apparently his only
interest was to procure insurance for the companies by whom
he was employed to solicit insurance, and his undertaking
with the assured to keep his property. insured was not in-
compatible with his duty to his principal, the insurer. It is
true that an insurance agent, having such power given him
by the insured, may properly be regarded for some purposes
as the agent of the assured, such, for instance, as waiving
notice of cancellation of the policy, as was held in *Hollywood
Lumber & °Coal Co.* v. *Dubuque Fire & Marine Insurance
Co.*, 80 W. Va. 604. See also *Pauley* v. *Sun Insurance Of-
fice*, 79 W. Va. 187. But he does not become the agent of
the insured for the purpose of making the contract. The
general rule forbidding an agent from acting for two prin-
cipals in their mutual transactions is not applicable here,
for the reason that there is nothing in the agent's obligation
to the insured inconsistent with the performance of his full
duty to the insurer for whom he acts as soliciting agent.
There are no antagonistic interests to be guarded. 2 Joyce
on Insurance, (2nd ed.), Sec. 662; 2 Clement on Fire Insur-
ance, Rule 93, page 504; 3 Cooley's Insurance Briefs, 2531;
1 same, 848; *Dibble* v. *Northern Assurance Co.*, 70 Mich. 1,
14 Am. St. 470; *Warren* v. *Franklin Insurance Co.*, 161
Iowa 440, 143 N. W. 554; *Pence* v. *Jameson*, 80 W. Va. 761;
*Hamm Realty Co.* v. *New Hampshire Fire Insurance Co.*,
80 Minn. 139; and *Todd* v. *German-American Insurance
Co.*, 2 Ga. App. 789.

Defendant's second proposition, that plaintiff violated the promissory warranty in the policy by procuring other insurance upon the property, is fully answered by the terms of the Reduced Rate Average Clause in the rider attached to and made a part of the policy. That provision is:

"In consideration of the rate at or form under which this policy is written, it is expressly stipulated and made a condition of this contract that this Company shall be held liable for no greater proportion of any loss than the amount hereby insured bears.to 80 per cent. of the actual cash value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

"If this policy is divided into two or more items, the foregoing conclusion shall apply to each item separately."

This provision gives implied authority to take other insurance, provided the whole amount taken does not exceed 80% of the actual cash value of the property insured, otherwise this provision of the policy would be meaningless. It is an express stipulation regarding the apportionment of loss in case other insurance is taken, and necessarily implies the right to take other insurance up to the prescribed limit, provided the entire amount does not exceed it. *Teter* v. *Franklin Insurance Co.*, 74 W. Va. 344; *Pool* v. *Milwaukee Mechanics' Insurance Co.*, 91 Wis. 530; *Straus* v. *The Phenix Insurance Co.*, 9 Colo. App. 386. In *Pool* v. *Milwaukee Mechanics' Insurance Co.*, *supra,* the promissory warranty in the body of the policy and the reduced rate average clause attached thereto were almost identical terms with similar provisions in this case, and the court there held that, by necessary implication, additional insurance within the limit of 80% of the value of the property was thereby permitted. But counsel for defendant insist that, because there was no special replication to its special plea setting up a breach of this warranty as a defense, no issue was taken and the averments of the plea must be taken *pro confesso.* There was a general replication to this plea, as there was to all other pleas made by defendant, and a special plea was not necessary to make an issue on this point as it is a matter arising upon the

construction of the policy itself. The question is not one of fact, but one of law for determination by the court.

As to defendant's third proposition, that plaintiff violated his warranty against ceasing to operate the mill for more· than thirty consecutive days without written permission, it is proven that a fire occurred on the 6th of December, which destroyed a portion of the property covered by the policy, and .another on the 8th of December, which destroyed the remainder of it. The mill was idle from sometime in the spring of 1912 until sometime in November of that year. Plaintiff produced a written permit from defendant's agent, dated September 4, ·1912, which authorized cessation of operations for a period of sixty days. This permit operated as a waiver of the forfeiture for failure to operate, if any had occurred prior to that time, and authorized the insured to cease operations for sixty days from its date; it amounted to an extension of the time, provided in the policy, from thirty days to sixty days. But this permit did not extend the time beyond the 3rd of November. Plaintiff's witnesses swear the mill was not operated from the spring of 1912 until sometime in November; that it was then operated one time and for parts of two days. Most of the witnesses say they do not remember the particular days in November when the operation occurred, and two of them swear that it was in the latter part of that month. and one of these, Mr. Cramer, who was the manager of plaintiff's mill, fixes the time as the last of November or the first of December, by the fact that he remembers the mill was run for the purpose of edging up some lumber to make out a carload which was shipped about that time. This evidence proves a breach of this warranty had occurred, before the mill was run on this last occasion. By no possible inference, properly to be drawn from the evidence, can the court be justified in finding that there had been no breach of this condition or warranty, for only one operation in November was proven, and no matter what day in the month it occurred, it could not prevent ·a breach. Cessation of operation for even one day, after the expiration of the period covered by the permit, would constitute a breach, and operation after the breach had occurred would

not estop defendant from taking advantage of it. The policy expressly provides that, if the subject of insurance be a manufacturing establishment and ceases to be operated more than ten consecutive days, it shall avoid the policy, and the only effect the rider attached to the policy has, is to extend this period to thirty days. 4 Joyce on Insurance, Sec. 2216a; 2 Cooley's Insurance Briefs, 1646; *El Paso Reduction Co. v. Hartford Fire Insurance Co.*, 121 Fed. 937; *McKenzie v. Scottish Union and National Insurance Co.*, 112 Cal. 548; and *Dover Glass Works Co. v. American Fire Insurance Co.*, 65 Am. St. Rep. 264.

That the sawmill was a manufacturing establishment there can be no doubt, plaintiff and defendant's agent both so regarded it, and plaintiff recognized the importance of observing the condition by procuring the permit extending the time to sixty days, but even that period, according to the evidence, does not cover the time of loss. Nor can it be said that this provision of the policy was immaterial. It is a part of the insurance contract and was inserted therein for some purpose. All the courts hold that substantial compliance with it by the insured is essential.

But this warranty related to and affected only the machinery in the mill. It was not designed to protect the insurer in its risk on the lumber stacked on the yard. The provision that a clear space be maintained between the mill and the stacked lumber, of course, was intended for the protection of both the mill and the lumber. That warranty was not broken. But the failure to operate the mill could not in any manner increase the risk on the lumber. There was no insurance on the building containing the sawmill. The mill in the building and the lumber on the yard were insured for $2,000, not as a whole but as separate items, $500 on the sawmill and $1,500 on the lumber. Whether, in such case, the policy is divisible or entire there is much conflict in the authorities. There are three distinct rules relating to the question, each finding support in the decisions of the various courts of this country. One rule is that if the premium is paid in gross, even though the property insured is separately valued, the contract is entire; another, that if the property is separately valued the

policy is divisible, even though the premium is in gross; and still another rule is, where the property is separately valued, the divisibility of the policy depends upon whether the property is so situated that the risk on one item of it affects the risk on the others. If a provision or warranty in a policy relating specially to one item of property separately valued affects the risk of all, the policy is regarded as entire, whether the premium is separate or in gross, but if it does not so affect the risk on all the property insured, the policy is divisible. 14 R. C. L., Sec. 114; *Benham* v. *Farmers' Mutual Fire Ins. Co.*, 24 Amer. & Eng. Ann. Cases, p. 983, and notes. See also note to *Joffe* v. *Niagara Fire Insurance Co.*, reported in 51 L. R. A. (N. S.) 1050.

The last named rule is the one which this court has adopted. *Fisher v. Sun Ins. Co.*, 74 W. Va. 694; and *Quarrier, Trustee,* v. *Peabody Ins. Co.*, 10 W. Va. 507. In the latter case Judge Green at page 530 says, "that the courts should be guided by a respect to general convenience and equity, and by the good sense and reasonableness of either construction, bearing in mind that 'the law leans strongly against forfeiture, and it is incumbent on the party who seeks to enforce one, to show plainly his right to it.' *Philadelphia and Wilmington Railroad Company* v. *Howard,* 13 Howard 340, and that a policy being a contract dictated by the insurance company should be construed most strongly against it. *Bryan* v. *Peabody Insurance Company,* 8 W. Va. 605. Applying this general principle to the case before us, I am inclined to think that, even if the policy could be construed to impose a forfeiture for an alienation, without the consent of the company, of any portion of the property insured, that such forfeiture could not extend beyond the insurance of the property mentioned in the policy as separately insured, of which the property so sold constituted a portion, if indeed it should be extended beyond the forfeiture of the insurance on the specific property sold." See also *Royal Insurance Co.* v. *Martin,* 192 U. S. 149; *Pratt* v. *The Dwelling House Mutual Fire Ins. Co.,* 130 N. Y. 206; *Miller* v. *Delaware Ins. Co.,* (Okla.), 65 L. R. A. 173; *Benham* v. *Farmers' Mutual Fire Ins. Co.,* 165 Mich. 406, 24 Amer. & Eng. Ann.

Cases, 983; and note to *Republic County Mutual Ins. Co.* v. *Johnson,* a Kansas case, reported in 2 Amer. & Eng. Ann. Cases, 22. According to these authorities, including our own decisions above cited, the breach of the warranty against ceasing to operate the mill for more than thirty days did not affect the risk on the lumber, and, therefore, did not avoid the entire policy, notwithstanding the policy in terms provided that a breach of any one of its conditions should avoid the entire policy.

But defendant made no request to have plaintiff's damages separately assessed, in the event the jury should find in his favor, and did not object to the amount assessed. The case was disposed of on a demurrer to the evidence, and no motion to set aside the verdict for excessiveness was made. In such case there is nothing for this court to do but affirm the judgment. Where the error complained of is the excessiveness of the verdict of the jury a new trial can be had only upon motion therefor, as the court is not bound on its own motion to grant it. "The appellate court cannot grant a new trial without such motion in the inferior court." *Riddle* v. *Core,* 21 W. Va. 530; *Proudfoot* v. *Clevenger,* 33 W. Va. 267; and *Bare* v. *Coal & Coke Co.,* 73 W. Va. 632. "Error in the amount of a verdict, found upon a demurrer to evidence, can not be noticed in this court, if no motion to set it aside was made in the court below." *City of St. Marys* v. *Locke,* 73 W. Va. 30. The judgment will be affirmed.

*Affirmed.*