## NIAGARA FIRE INS. CO. v. WILKERSON.

No. 19838. Opinion Filed Dec. 23, 1930.

Rehearing Denied June 30, 1931.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

White & White, for defendant in error.

BENNETT, C. C. B. Wilkerson sought to recover of defendant on a policy of fire insurance covering real and personal property. The cause was tried to the court and plaintiff was awarded $500. Defendant appealed. The pleadings, in the usual form, disclosed the issuance of the policy and the destruction during the term of a part of the property covered. The property destroyed was a barn, grain, seeds, harness, wagon, and hay. Defendant relied upon the failure of plaintiff to disclose in his application the existence of a second mortgage whereby the policy became null and void. The parties will be referred to here as plaintiff and defendant in the order of their appearance in the trial court.

The policy of insurance was in statutory form and covered a dwelling valued at $1,500, insured for $1,000; household and kitchen furniture only while contained therein valued at $500, insured for $500; barn and shed valued at $500, insured for $300; grain and seeds of all kinds while housed or in shock or stacks upon the premises valued at $200, insured for $200; harness, saddles, robes, blankets, whips, carriages, buggies, sleighs, wagons, including hay racks, and all other farm vehicles (excluding steam or motor driven vehicles) while on or temporarily off the premises, valued at $200, insured for $200; hay straw, fodder, ground feed, and all kinds of manufactured stock foods, etc., valued at $100, insured for $100; any one stack of hay, valued at $100; any one stack of straw or fodder, valued at $50; horses, mules, colts, valued at $400, insured for $400. The insurance policy covered fire and tornado damage, and the total premium was $147, the separate rates being set out in the policy.

Plaintiff testified that he was a farmer, and that his property hereinafter described was destroyed by fire at about 9:30 o'clock

at night May 7, 1927: a barn about 30x50 feet and worth $600 or $700; also the following property in the barn at the time of the fire: 800 bales of hay worth 50 cents per bale; 500 bushels of corn worth 75 cents to $1 per bushel; 50 bushels of cottonseed worth 50 cents or 75 cents per bushel; two sets of harness worth $50 each, and a wagon worth $100; that after the fire defendant wrote to plaintiff denying liability on the ground that his application for insurance did not disclose the second mortgage on the farm, and tendered the premium.

On cross-examination plaintiff identified and there was introduced his application for fire and tornado insurance in the sum of $2,700; the fire insurance at a rate of $4, the tornado insurance at the rate of $1, total premium $147, containing the provision that "it is understood that the personal property described in this application is to be covered whether belonging to insured or members of insured's family of lawful age or not." The application set out the various items to be covered, the value and the amount of insurance to be carried on each. This application showed inquiries 8 and 9 with the answers thereto as follows:

"8. Is any of your property, real or personal, under mortgage, lien or incumbrance? If so, state how, to what amount, and when due? 8. Amt. $2,500 due 1931. 9. Give name and P. O. address of mortgagee or holder of lien? 9. Gum Bros. Co. Okla. City, Okla."

Plaintiff upon further examination stated there was also a mortgage on the property in favor of Hill and Forrester for $1,200 or $1,500, made by a former owner of the land; that plaintiff bought the land subject to this mortgage, and that he knew it was there when he applied for insurance. Proof as to what occurred between plaintiff and the insurance agent at the time of making the application was objected to by defendant as not within the pleadings, whereupon the attorney for the defendant addressed the court as follows:

"Now, it seems to me that it resolves itself into a pure question of law, as to the divisibility of the policy, that is, whether or not the existing incumbrance on the farm which includes the barn will operate under this form of policy to defeat recovery as to the items of personal property which were not covered by the incumbrance; those items of property aggregate $500, and it appears to me that the sole question in this case, and I am willing to try the case out on that one proposition, and let the chips fall where they may. * * *

"The Court: It is also admitted that the property was of the value as claimed.

"Mr. Webster: Yes, sir, the only question is the divisibility of this contract of (or) the separability of it. * * * I think I will move the court for judgment in favor of the defendant upon the evidence so far offered and stipulations thus entered into."

At this juncture each party moved for a directed verdict. The court overruled the motions. Thereupon it was stipulated that the jury might be discharged, and that the court should render judgment upon the evidence and the stipulations. After argument the court rendered judgment for plaintiff for $500. Was this error?

It will be noted that the personal property was not covered by any mortgage, but that the real estate was covered by a mortgage in favor of Gum Bros., and also by one in favor of Hill and Forrester at the time of the delivery of this policy of insurance. Counsel for the defendant, in order to shorten the proof and facilitate the hearing, recognized and presented to the trial court and insists here upon but one vital contention—that the contract of insurance was not divisible, but was entire—and was therefore rendered void by the breach.

The question of divisibility or severability of insurance is of great importance in determining the effect of a breach of the contract as to a part of the subject-matter of insurance, for, if the contract is entire, all of the protection will be lost if there is a breach as to any part of the risk, whereas, if the contract is severable, it will be voided only as to the part directly affected by the breach. These questions have been before the courts in many instances, and there has been reached thereon much diversity of conclusion. It must be conceded that the question of divisibility or separability rests primarily upon the intention of the parties deducible from the stipulations of the contract and the rules governing the ascertainment of that intention. It may be stated as an elementary rule that, where several items of property are insured for a gross sum and in consideration of one premium, the contract is entire and not divisible. On the contrary, where the contract covers several items which are separately valued, and the policy is issued for a gross premium, the conflict between the courts seems irreconcilable. Three main rules may be deduced from the holdings: (1) That the contract is divisible, even though the premium is gross or entire; (2) that the contract is indivisible if the premium is gross or en-

tire, notwithstanding the property insured consists of separate items which are · separately valued; and (3) that the question of severability depends on the nature of the risk; that is, whether the risks, even though separately listed, are so interdependent that one cannot be affected without affecting all the property. Under the last rule, if the risks are so interdependent, the contract will be held as entire, but if a breach as to one or more items will not affect the risk on the other items, the contract is severable and the breach does not affect the insurance as to the latter items. It seems that a mere provision that "the policy" shall be avoided for a breach of any of its conditions is not sufficient to prevent the contract from being declared divisible, if it is otherwise so. Dacey v. Agricultural Ins. Co. 21 Hun. (N. Y.) 83. However, there is a conflict of opinion on this phase of the question. Some cases, on . account of the repugnance of courts to declare forfeitures of an entire policy for breach of a technical condition touching a part only of the risk, support the rule that the fact that the policy provides that the "entire" policy or contract shall be void under certain conditions, does not affect the rule that, where the items are separately valued, the contract is divisible, while others adopt a contrary rule. Vol. 1, Cyclopedia of Insurance Law (Couch), p. 457, par. 212; Trabue v. Dwelling H. Ins. Co., 121 Mo. 75, 23 L. R. A. 719, 42 Am. St. Rep. 523, 25 S. W. 848; Donley v. Glens Falls Ins. Co., 184 N. Y. 107, 76 N. E. 914, 6 Ann. Cas. 81; American A. G. Stamping Co. v. Glens Falls Ins. Co., 1 Misc. 114, 20 N. Y. Supp. 646; Mott v. Citizens Ins. Co., 69 Hun. 501, 23 N. Y. Supp. 400; Adler v. Germania F. Ins. Co. 17 Misc. 347, 39 N. Y. Supp. 1070; Miller v. Delaware Ins. Co., 14 Okla. 81, 75 Pac. 1121; Arkansas Ins. Co. v. Cox, 21 Okla. 873, 98 Pac. 552, and many other cases cited under note 2 in Couch, supra, p. 457.

It is familiar learning that the provisions of a fire insurance policy are always construed so as to prevent a forfeiture if such provisions will reasonably admit of such construction. Royal Ins. Co. v. Martin, 192 U. S. 149, 48 L. Ed. 385. We have approved the same doctrine in Hartford Fire Ins. Co. v. Union Graded School Dist. No. 73, 121 Okla. 246, 249 Pac. 345.

We think the question at bar has been, in effect, passed on in the case of George v. Connecticut Fire Ins. Co., 84 Okla. 172, 201 Pac. 510. In that case numerous items of personal property were insured under one policy. The assured disclosed but one mortgage in his application, but the proof showed that there were several others. The application in that case was as follows:

"This indemnity contract is based upon the representations contained in the application of even number herewith, and which the assured has signed and permitted to be submitted to the company, and which is made a warranty and a part hereof; and it is stipulated and agreed that if any false statements are made in said application * * * or if the interest of the assured be other than unconditional, unincumbered and sole ownership, * * * or if the property herein named or any part thereof shall hereafter be or become mortgaged or incumbered, then in each and every one of the above cases, this entire policy shall be null and void, unless otherwise provided by agreement indorsed hereon."

In that case the court said:

"As stated in the case of Bond v. National Insurance Co. (83 W. Va. 105, 97 S. E. 692) supra, the different court's are in conflict as to whether the policy is a divisible contract or an inseparable contract. One line of decisions adheres to the rule that if the premium is paid in gross, even though the property insured is separately valued, the contract is entire. Another line adheres to the rule that if the property is separately valued, the policy is divisible, even though the premium is paid in gross. The other rule is the rule announced in the case of Miller v. Delaware Ins. Co., supra, to wit: Where the property is separately valued, the divisibility of the policy depends upon whether the property is so situated that the risk on one item affects the risk on the others, and if the items of property separately valued affect the risk on all the property, it is regarded as an entire contract, and if it does not so affect the risk on all the property, the policy is divisible.

"The risk upon the horses, cattle, or upon the grain or farm implements, would not affect the risk upon the household furniture. We think the court committed error in holding, which it necessarily did, that the policy was an inseparable contract."

In that case the policy was for the total sum of $2,000; . (1) $200 on household and kitchen furniture, etc., "while contained in the above-described dwelling house;" (2) $150 on iron and board roof frame barn No. 1, with shed attached, including foundation; (3) $250 upon grain, corn, ground feed, and seed while in building or in stacks on farm; (4) $100 on farming utensils, wagons, harness,. saddles, etc., while in building on farm; (5) $350 on hay, straw, fodder, and flax while in building or in stacks on farm; (6) $800 on horses, mules, and colts

anywhere; (7) $150 on cattle anywhere. The action was brought to recover the loss of (1) household furniture; (2) grain; (3) certain farming utensils; (4) hay.

In the former appeal of that case, the contract was held inseparable, and that a violation of the conditions of the policy relating to one class of property therein covered rendered the entire policy void. On rehearing, in an opinion delivered by McNeill, J., this holding was reversed. Citing Miller v. Delaware Ins. Co. of Philadelphia, 14 Okla. 81, 75 Pac. 1121, as follows:

"Where an insurance policy is issued, and different classes of property are insured, each class being separated from the others, and insured for a specific amount, and there is a breach of the conditions of the contract as to one class of the property insured, the contract should be considered, not as one entire in itself, but as one which is severable, and in which the separate amounts specified may be distinguished, and a recovery had for one or more of them without regard to the other, provided the contract is not affected by any question of fraud, act condemned by public policy, or any increase of the risk of the company on the whole property insured because of the breach."

The case of Bond v. National Fire Ins. Co. of Hartford, Conn. (W. Va.) 97 S. E. 692, is cited and quoted from approvingly, as is the annotation in 2 Am. & Eng. Ann. Cas. 22; also the case of Merrill v. Agricultural Ins. Co., 73 N. Y. 452, holding that breach of the condition in a policy of insurance by placing incumbrances on the buildings did not avoid the policy as to chattels in the buildings which were reasonably valued. The court in the Merrill Case, supra, says:

"There is nothing to show that an incumbrance upon the buildings would have been an objection to a risk on the chattel property; or that the opportunity of insuring on the buildings was the inducement to taking a risk also on the chattels. There is nothing in the nature or terms of the contract which makes it so much an entirety as that it is at all difficult to tell the amount insured on the buildings, as distinguished from that at risk upon the chattels. There is nothing to show that had the chattels been insured, without insuring the buildings, the premium would have been greater or different. The risks are not necessarily indivisible, they may be dealt with in separate clauses, and are made up of distinct and independent sums on different and distinct properties. There may be reasons which, existing as to one class of the property insured, might deter an insurance company from taking a risk on any of the classes. Some such general cause, as fraud in the insured as to one class, would in its nature

extend to the whole subject-matter of the contract, and vitiate and avoid the whole contract in all its parts. But it is difficult to conceive how an act, in itself not evil, though it may affect one of the classes of property insured, and so affect it as to increase the hazard, if it does not also increase the hazard on another class, should operate so as to impair the contract as to that latter class."

In Trabue v. Dwelling House Ins. Co., 121 Mo. 75, 25 S. W. 848, the court says:

"When one applies for distinct and separate insurance, a part on real estate, a part on personal property, he can require two separate policies. The accidental circumstance that for convenience merely they are included in one policy does not merge them into one. If the goods alone were destroyed, the terms of the policy applying to them alone could be made the basis of recovery. The supposed danger of making a contract for the parties is not in the case. The question is whether, according to legal principles, the contract made is severable or entire. There is nothing to indicate the company would not have assumed the risk on the house without taking one also on the goods, nor vice versa. The contract as to each admitted of being separately executed as to the separate subjects of insurance. The application is for separate insurance, and it is kept distinct in the policy."

This case was followed in Hollaway v. Dwelling House Ins. Co., 121 Mo. 87, 25 S. W. 850, reversing 48 Mo. App. 1.

In Georgia Home Ins. Co. v. Brady (Tex. Civ. App.) 41 S. W. 513, the court said:

"It is well established that stipulations as to ownership are warranties only as to property specified in such stipulations, and, upon a policy embracing real and personal property, such stipulations are divisible." Continental Ins. Co. v. Ward, 50 Kan. 346, 31 Pac. 1079; Kansas Farmers Fire Ins. Co. v. Saindon, 53 Kan. 623, 36 Pac. 983; Stephens v. German Ins. Co., 61 Mo. App. 194; Bills v. Hibernia Ins. Co., 87 Tex. 547, 29 S. W. 1063.

There is a wealth of authority on the many phases of this question presented in a note to Harris Joffe v. Niagara Fire Ins. Co. of N. Y., 51 L. R. A. (N. S.) 1047 to 1068.

There is contained in the policy under consideration this provision:

"This policy is based upon the valuation and representations contained in the assured's application and diagram of even number herewith, which the assured has signed and submitted to the company, and which are hereby made warranties and a

part hereof; and it is stipulated and agreed that if any false statements are made in said application, or otherwise; or if the assured, without written consent hereon, has now, or shall hereafter procure any other contract of insurance, whether valid or not, on any of said property; or if the property or any part thereof shall hereafter become mortgaged or incumbered; * * * or if the assured shall not be the sole and unconditional owner in fee of said property; * * * then, in each and every one of the above cases, this policy shall be null and void."

There is a subsequent provision in the policy to the effect:

"And it is hereby understood and agreed by and between this company and the assured that this policy is made and accepted in reference to the foregoing terms and conditions, and that a breach of any of its conditions shall forfeit this entire policy as to all of the subjects of insurance named herein."

This particular provision follows the provisions of the policy dealing with the requirements made of the assured in the event of loss, the proofs of loss and certificates connected therewith, and the necessity for exhibiting to the company the undestroyed property, the submitting by the assured to examination under oath, etc., as well as the details incident to an arbitration.

The first provision above seems to have been directed at representations with respect to value of, and incumbrances on, the property contained in the policy; the latter clause, it might be reasoned, had reference to other violations; otherwise, there is a specific forfeiture provided for, and also a general forfeiture covering the same violation. At any rate, we have for decision the simple question: Was this insurance contract severable, divisible, or was it entire?

We think the fundamental rule is, and should be, that an insurance policy should be so construed as to effectuate the purpose of indemnification against loss rather than to defeat it. Moreover, that provisions warranting forfeiture should be strictly construed to prevent the destruction of the contract, and, finally, that the provisions of the policy should be construed as favorably as reason will permit in favor of the insured. From an examination of the authorities, we are inclined to believe that the trend of current decision is in favor of construing a policy of insurance covering distinct classes of property separately valued, but for a gross premium to be a severable contract. This is true regardless of whether the property insured is entirely real or

entirely personal, or part real and part personal.

A few of the many cases supporting the general principle are: Merrill v. Agricultural Ins. Co., 73 N. Y. 452, 29 Am. Rep. 184; Loehner v. Home Mutual Ins. Co., 17 Mo. 247; Phenix Ins. Co. v. Lawrence, 4 Metc. (Ky.) 9; Clark v. New England Ins. Co., 6 Cush. 342; Hartford Ins. Co. v. Walsh, 54 Ill. 164; Koontz v. Hannibal Savings & Ins. Co., 42 Mo. 126.

The court in the Merrill Case, supra, says:

"When there are several objects of insurance (as there are 14 here) separately valued, on which a gross sum is insured not exceeding the aggregate of that valuation for the insurance of which a premium in gross is paid, it is easy to see what is the rate of premium on the whole valuation, and what is the amount of premium on each subject insured. This being so, it seems fanciful to say that, if the facts thus easily reached were stated in detail in the contract, it would be severable, while not being specifically spread out it is entire. If there were anything in the terms or nature of the particular contract, or in the circumstances of the case, or in the nature of the different subjects of the insurance, from which it was to be inferred that the insurer would not have been likely to have assumed the risk on one or several of them, unless induced by the advantage and profit of having a risk on all, that would be a rational cause for deeming the contract entire. But when, for aught that appears, when indeed it is as likely that the insurer would have taken a risk upon any one or any few of the subjects insured, at the same rate of premium as upon the whole, and has in the policy so separated the subjects and so singled them out by a specific valuation as that there is no difficulty in distinguishing one of the subjects from the rest, and closing the contract as to that separately, and carrying forward the contract as to the rest, it does result that the contract is severable in practical operation, and hence in law."

In that case the court held on account of an incumbrance on the building that there was a breach of the policy. The court said:

"Perhaps the condition is literally broken by an incumbrance upon the buildings. But, as was said in Heacock's Case (N. Y. 1856) supra, as to similar conditions, the intention of both parties is affected by construing the phrase in the contract, 'then this policy shall be null and void,' as attaching to the property so severally situated as to come within the force of the condition, and thus treating

the insurances as separate on each property. This mode of reading various phrases in the policy must also be adopted to do justice to the insurers in contingencies that might arise."

The same principle is announced in Royal Ins. Co. v. Martin, 192 U. S. 149, 48 L. Ed. 385; Coleman v. New Orleans Ins. Co. (Ohio St.) 16 L. R. A. 174; Commercial Ins. Co. v. Spankneble, 52 Ill. 53, 4 Am. Rep. 582; Hartford Fire Ins. Co. v. Walsh, 54 Ill 164, 5 Am. Rep. 115; Schuster v. Dutchess County Mut. Ins. Co., 102 N. Y. 260, 6 N. E. 406; Benham v. Farmers Mut. Fire Ins. Co., 165 Mich. 406, 131 N. W. 87; Joffe v. Niagara Fire Ins. Co. (Md.) 51 L. R. A. (N. S.) 1050; Pratt v. Dwelling House Mutual Fire Ins. Co., 130 N. Y. 206, 29 N. E. 117; Springfield F. & M. Ins. Co. v. Green (Tex. Civ. App.) 36 S. W. 143; Georgia Home Ins. Co. v. Brady (Tex. Civ. App.) 41 S. W. 513; State Ins. Co. v. Schreck (Neb.) 43 N. W. 340.

It will be observed that the policy covered plaintiff's dwelling house and his household and kitchen furniture while kept in said house; $300 on barn and sheds, foundations, fixtures, etc.; $200 on grain and seeds while in dwellings, granary, barn cribs, while on the premises described; $200 on harness, saddles, robes, buggy, wagons, etc., while on or temporarily off the premises; $100 on hay, straw, fodder, feed, while in barns on the premises described; $100 on hay, straw, fodder in the stack; $400 on horses, mules, colts. There is no provision in this contract that the personal property, other than household furniture, was in, or was to be kept in, any particular place on the premises. The plaintiff's farm contained 120 acres. It should be noted also that the several properties covered were separately valued and were protected by a specific amount in the policy, and that the rate upon which the premium was calculated was specified.

The proof showed the fire occurred about 9:30 at night; that the barn was worth $600 or $700; that about 800 bales of hay, 500 bushels of corn, 50 bushels of cottonseed, two sets of harness and a farm wagon, all worth much in excess of the amount insured for, were destroyed. The full terms of the policy after the fire were complied with. The plaintiff admitted that there was a mortgage on the farm in addition to the one set out in the application, and when interrogated about it an objection was made by defendant, and thereupon the parties made stipulations for dismissal of the jury

and the trial of the cause by the court upon the sole question of divisibility of the contract. The proof does not show that all of the personal property covered by the policy was in the barn, nor does it appear whether the fire originated in the structure itself, or in personal property therein or adjacent thereto. There was no showing that the defendant would not have separately insured this property at the same rates. Many cases hold that where one applies for insurance upon separate property for separate amounts, and a policy is issued covering all, it should be treated as separate insurances for the separate properties. Certainly, if separate policies had been issued in this case, no question could have arisen as to the validity of the coverage on the personal property in question here. The plaintiff at the trial disclaimed insurance on the barn on account of the undisclosed incumbrance existing thereon.

Under the authorities cited above, together with Arkansas Ins. Co. v. Cox, 21 Okla. 873, 98 Pac. 552; Miller v. Delaware Ins. Co., 14 Okla. 81, 75 Pac. 1121; George v. Connecticut Fire Ins. Co., 84 Okla. 172, 200 Pac. 544, and under the stipulation of counsel, we hold that the finding by the trial court that the contract was severable was not error. Under the stipulation, any question of fraud or wrongdoing passes out of the case. Defendant contends that the additional mortgage lessened the plaintiff's interest in the premises and made his care of the same less exacting. The undisputed facts here are that the unincumbered personal property was much more valuable than the barn, and there is no intimation that the plaintiff either gave insufficient attention to the property, or that he had anything to do with its destruction. There is a provision in the policy protecting this personal property, even if title thereto should rest in any member of plaintiff's household.

There are cases—many of them—opposed to our holding here. A number of them have been called to our attention in the brief. In fact, the courts are in irreconcilable conflict. We think our court has foreshadowed the holding here in the cases from this court referred to above and we think that there is a trend of modern authorities towards holding these contracts, made in good faith, severable where there is no question of fraud or imposition presented.

The parties themselves in setting out the rate to be paid on each class of property, its value, and the insurance carried there-

on, indicated that the contract should be severable. This was of value to the defendant, and no doubt it would have availed itself of the benefit by restricting its liability to the amount covering each particular class of property destroyed if it had been needful; but it prefers to strike down the entire contract as entire upon the assumption that it would not have issued protection on any of this property if it could not have insured all, but there is no evidence here to that effect.

For the reasons given, the judgment is affirmed.

TEEHEE, LEACH, EAGLETON, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.