Connecticut Fire Ins. Co. of Hartford, Conn., v. George et al.

been overruled, in any manner defend against the action without waiving his objection; but if he does more and, aside from his defense, voluntarily demands affirmative relief in the same action, and thus invokes the jurisdiction of the court in a manner unnecessary to his defense, he will be deemed to have waived such objection."

See, also, *Oates et al. v. Freeman* (No. 5790), 157 Pac. 74, not yet officially reported.

The judgment should be affirmed.

By the Court: It is so ordered.

---

CONNECTICUT FIRE INS. CO. OF HARTFORD, CONN., v. GEORGE *et al.*

No. 5200.    Opinion Filed November 16, 1915.

(153 Pac. 116.)

1. INSURANCE—Fire Insurance—Right of Action—Submission to Examination. A requirement in a policy of fire insurance that the insured shall submit to an examination under oath touching the matters relating to the risk assumed by the company and the destruction of the property insured is binding and valid, and a refusal to comply with this condition will preclude the insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition.

2. SAME—Examination Under Oath. During the examination provided for in the insurance policy, the insured frequently refused to answer material questions, giving as his reason that the questions asked had nothing to do with the matter in issue. At the close of the testimony, the insured informed the company's attorney that he would not refuse to answer any reasonable question that in any way pertained to the matter under investigation. Held, that this offer cannot be construed as a willingness to answer questions which he had previously refused to answer.

3. SAME. It is urged that the examination provided for in the insurance policy was not conducted in good faith. Held, as long as

the examination is conducted within the terms of the policy, the insured cannot inquire into the motive actuating the company in conducting the examination.

4.    **SAME.** In such examinations, the company has no right to inquire into a proposition unless it has some legitimate bearing upon the question at issue; that is, unless it is material and tends to shed light upon a point about which the company has a right to be informed; yet the examination should not be circumscribed by any narrow or technical rule, but should be broad and liberal in its scope so as to reach the end intended by the insertion of such a clause in the policy.

5.    **SAME.** In the application for an insurance policy, it was stated that the property was incumbered by chattel mortgage for $400 After the loss, there was found to be of record four chattel mortgages executed by the insured, in a sum far in excess of $400, covering the same or similar property to that embraced in the policy.    At the examination, the insured refused to answer whether or not he executed these mortgages.    **Held,** the questions were pertinent and material to the issue, and the insured was precluded thereby from maintaining an action upon the policy until the questions were answered in an examination held according to the terms of the policy.

(Syllabus by Mathews, C.)

### Error from County Court, Kay County; Claude Duval, Judge.

Action by William George and another against the Connecticut Fire Insurance Company, of Hartford, Conn. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

*Scothorn, Caldwell & McRill,* for plaintiff in error.

*William S. Cline* and *Everett L. Cline,* for defendants in error.

Opinion by MATHEWS, C. Parties will be designated here as in the trial court. This was an action upon a fire insurance policy. In December, 1911, the insured sustained a loss by fire upon a part of the property insured, and upon defendant's refusal to pay the same, this suit followed.

After the loss, the interest of Joe George in the policy was indorsed and transferred to William George. To plaintiffs' action defendant answered, admitting the issuing of the policy, and then alleging that plaintiff, Joe George, did not truthfully state the facts as to the amount of the mortgage upon the insured property at the time the policy was issued; and that said plaintiff, after the loss, failed and refused to submit to an examination under oath as stipulated in the policy. The plaintiffs replied by general denial. The case was tried before a jury, which returned a verdict for $748 in favor of the plaintiffs.

The first proposition presented here by the plaintiff in error is:

"The insured, after the loss, failed and refused to comply with the requirements of the policy with reference to his submission to an examination under oath, and is therefore barred from maintaining this action."

The policy contained a clause of the following tenor:

"This indemnity contract is based upon the representations contained in the application of even number herewith and which the assured has signed and permitted to be submitted to the company, and which is made a warranty and a part hereof; and it is stipulated and agreed that if any false statements are made in said application, * * * or if the interest of the assured be other than unconditional, unincumbered and sole ownership, * * * or if the property herein named or any part thereof shall hereafter be or become mortgaged or incumbered, then in 'each and every one of the above cases this entire policy shall be null and void, unless otherwise provided by agreement indorsed hereon."

Another provision in the policy relative to procedure in case the insured property is damaged or destroyed by fire is as follows:

"The assured shall also produce all that remains of the property hereby insured, whether damaged or not, and exhibit the same for examination and submit to examination under oath and subscribe to same, to any person named by the company. * * * No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements."

In the written application for the policy signed by the assured it was stated that the property was incumbered in the sum of $400.

After defendant was notified of the loss, it caused formal notice to be served upon the insured, requesting him to submit to an oral examination under oath. In compliance with said notice, the insured appeared, and the following proceedings were had:

"Q. Was it (referring to some corn plaintiff had marketed) a part of your 1911 crop? A. Well, I refuse to answer this question for the reason that it has nothing to do with the matter in question, but I am willing to answer questions on the other items. Q. I insist that you answer this question, and state to you now that, if you refuse to do so you must do so subject to the conditions and penalties provided in the policy of insurance. Q. There is a question that you refused to answer, you still refuse to answer it? A. Yes, the reason above set forth. Q. There is on file in the office of the register of deeds of Kay county, Oklahoma, chattel mortgage No. 45982, dated January 30, 1911, and made by Joe George to Traders' Bank at Arkansas City, to secure payment of the sum of $725.50. Did you give that mortgage? A. I refuse to answer that question, for the reason that it has nothing to do with the matter in issue, but am willing to answer all reasonable questions. Q. Permit me then to state to you here and

now that the Connecticut Fire Insurance Company insists upon an answer to said question under the pains and penalties provided in its said insurance policy No. 702538, under which you are asserting your claim. With this information do you still refuse to answer the question? A. Yes, sir. Q. There is on file in the office of the register of deeds of Kay county, Oklahoma, chattel mortgage No. 46815, dated April 1, 1911, and given by Joe George to the Newkirk Mercantile Company to secure the payment of the sum of $1,300; did you give that mortgage? A. I certainly did. Q. Has the mortgage been paid? A. Has been foreclosed. Q. That mortgage covered 20 acres of wheat; that was your 1911 crop, was it? A. I don't feel like answering a question that interferes with some other case that is being foreclosed, and has nothing to do with this matter. Q. Do you refuse to answer the question? A. Under the circumstances I do. Q. The chattel mortgage last hereinabove referred to also covers 100 acres of corn. Was that a part of your 1911 crop? A. I refuse to answer the question, because I had enough corn besides the 100 acres to cover what I lost under the insurance. Q. Then permit me to state to you that the Connecticut Fire Insurance Company here and now insists and demands that you answer this question, and if you refuse to do so, such refusal must be under the pains and penalties provided in said insurance contract No. 702538 held by you. Do you still refuse to answer the question? A. I refuse to answer under the statement made above by me. Q. There is on file in the office of register of deeds of Kay county, Okla., chattel mortgage No. 44659, dated September 9, 1910, and given to one Prewitt by Joe George and Lewis George, to secure payment of the sum of $105. Did you give that mortgage? A. No, sir; I did not. Q. Did you give any chattel mortgage to any one by the name of Prewitt during the month of September, 1910? A. I have nothing to say on that. Q. Do you refuse to answer the question? A. I have nothing to say. Q. Then permit me to state to you

that the Connecticut Fire Insurance Company here and now insists and demands that you answer this question, and if you refuse to do so such refusal must be under the pains and penalties provided in your insurance policy No. 702538. Do you still refuse to answer the question? A. I have nothing to say. Q. There is on file in the office of the register of deeds of Kay county, Oklahoma, chattel mortgage No. 45687 given by Joe George to Dan Bunnell and covering four horses, eight cattle, three hogs, one wagon, one cultivator, and one buggy, said mortgage being given to secure payment of the sum of $296.45. Did you give that mortgage? A. I have nothing to say. Q. Do you refuse to answer the question? A. I have nothing to say. Q. Then permit me to state to you that the Connecticut Fire Insurance Company here and now insists and demands that you answer said question, and if you refuse to do so, such refusal must be under the pains and penalties provided in your insurance contract No. 702538. Do you still refuse to answer the question? A. I have nothing to say. Q. Inasmuch as you refuse to answer my questions asked on behalf of said Connecticut Fire Insurance Company, I am unable to proceed further with this examination. Are you willing to sign the typewritten transcript of the proceedings here today. A. I do not refuse to answer any reasonable question that in any way pertains to the matter before us, and I am still ready to answer any questions propounded to me which in reason have any relation or bearing upon the insurance policy or property insured, but I do refuse to give the insurance company a complete history of my life and my family relations. I am also willing to sign the said evidence as taken."

The defendant contends that at the time the insurance policy was issued, the plaintiff, Joe George, made a representation to it in his written application that the property insured was not subject to any mortgage or incumbrance, except that it was mortgaged for

the sum of $400, while at that very time there was of record four chattel mortgages given by said plaintiff to divers parties covering the same or similar property to that covered by the insurance policy in a sum far in excess of $400, and that in refusing to answer defendant's interrogatories relative to the execution of said mortgages as set out in detail above, under a certain clause in the policy, no action thereon could be maintained until a full compliance by the insured with all the provisions of the policy, and that the insured, having failed to submit to an examination and properly answer interrogatories submitted to him, could not maintain this action until he had fully complied with that provision of the policy, and hence the action, being immaturely brought, should be dismissed.

The assured in this case does not attack the validity of this clause in the insurance policy, but practically admits the same to be binding and valid, and no case from any state has been called to our attention that does not fully uphold the validity of such a provision. *Firemen's Fund Ins. Co. v. Sims*, 115 Ga. 939, 42 S. E. 269; *Jacob H. Fleisch et al. v. Insurance Co. of North America*, 58 Mo. App. 596; *Gross v. St. Paul F. & M. Ins. Co.* (C. C.), 22 Fed. 74; *Southern Home Ins. Co. v. Putnal*, 57 Fla. 199, 49 South. 922; Ostrander on Fire Insurance, section 174.

The plaintiffs attempt to meet defendant's contention as follows:

"The defendant in error, Joe George, appeared and submitted to an examination at great length, as is shown by the case-made, and the examination covered from pages 61 to 80 inclusive, of the case-made. We submit that the plaintiff in error in conducting the examination

was conducting the same, not for the purpose of ascertaining what property was destroyed by fire and the value of the property destroyed by fire, but for the purpose, if possible, under the particular provisions of the insurance policy, of laying a foundation to attempt to defeat the defendants in error in their recovery on the policy. We say this because an examination of the record from pages 61 to 80 of the case-made discloses that as soon as the plaintiff in error succeeded in getting the defendant in error, Joe George, to refuse to answer some questions pertaining to the giving of some mortgages, he was at once unable to proceed further. The plaintiff answered its last question as follows: 'I do not refuse to answer any reasonable question that in any way pertains to the matter before us, and I am still ready to answer any questions propounded to me, which in reason have any relation or bearing upon the insurance policy or property insured, but I do refuse to give the insurance company a complete history of my life and my family relations.' We submit that if the insurance company was proceeding in good faith and not for the purpose of trying to trap the defendant in error, he would have proceeded with his examination after the offer on the part of Joe George, the defendant in error, and that, by not proceeding with the examination, that the insurance company waived the further examination of the defendant, and that said defense is no defense to the action on the policy."

We fail to find any merit in the contention of plaintiff Joe George that he informed defendant's attorney at the time the examination was concluded that he did not refuse to answer any reasonable question that in any way pertained to the matter under investigation, and that the attorney for defendant, notwithstanding he had been met with a refusal to answer certain questions, should have proceeded with the examination upon being advised as above stated. The trouble here is that the

plaintiffs' and the defendant's attorneys seemed to differ widely as to what questions were reasonable. Several times during the examination the said plaintiff had refused to answer very material questions, giving as his reason that the question asked had nothing to do with the matter in issue. If he had in fact relented and decided to answer in regard to matters about which he had already been questioned and refused to answer at that time, instead of informing defendant's counsel in an indefinite way that he was ready to answer any question propounded to him which had any relation or bearing upon the policy in question, instead of giving such a qualified and uncertain answer, he should have informed counsel that he was then ready and willing to answer the questions which he had theretofore refused to answer. In the absence of such information counsel for defendant was warranted in thinking that plaintiff had not changed his attitude, but still insisted on being the sole judge of whether or not the questions propounded were material, and would still refuse to answer those he deemed not pertinent.

There may be logic in plaintiffs' argument that defendant was not conducting the examination in good faith, but the fact still remains that defendant was acting within the terms of an expressed stipulation found in the policy, which gave it the right to demand such an examination, and it is not for the insured to inquire into the motive actuating the company in exacting the examination, but on his part to comply therewith and to answer all material questions, notwithstanding he may believe that the principal object of the company is to find some loophole whereby it might evade payment of the policy.

The plaintiffs next contend that as the chattel mortgages inquired about did not embrace any property covered by the insurance policy, the questions propounded were not material, and the insured was not bound to answer same.

It is true that the insurance company had no right in the examination to inquire into a proposition unless it had some legitimate bearing upon the question at issue; that is, unless it is material and would shed light upon a proposition about which the company had a right to be informed. *Insurance Co. v. Weide,* 14 Wall. 381, 20 L. Ed. 894.

"Webster defines 'material' to be something 'of solid or weighty character; substantial; of consequence; not to be dispensed with; important; specific; especially law, such as does or would affect the determination of a case, the effect of an instrument, or the like; constituting a matter that is entitled to consideration; such as must be considered in deciding a case on its merits.'" *(Thompson v. State,* 6 Okla. Cr. 50, 117 Pac. 216.)

"Evidence offered in a cause, or a question propounded, is material when 'it is relevant and goes to the substantial matters in dispute, or has a legitimate and effective influence or bearing on the decision of the case." (8 Ency. of Ev. p. 550.)

The company found of record four chattel mortgages apparently executed by the insured and covering apparently the same property covered by the policy. It was impossible to take the four mortgages and the insurance policy and arrive at any certain conclusion, whether or not the property mentioned in each was the same. The insured was possessed of this information, and the insurance company had a right to know. It was in search of

information along that line.  If the insured had willfully misrepresented the facts in obtaining the policy and had represented to it that the property was incumbered for $400 only, when in fact the incumbrance amounted to a sum far in excess thereof, then the company was not liable for any loss; but if the representations made to it were true, and the insured knew whether the same were true or not, then it would be liable, and it is to be presumed that the company in good faith was in search of information upon which it might base its conclusion as to its liability, and pay the same without a suit, if its liability appeared from its investigation, including information acquired at the examinations.

While the questions propounded at such examinations must be material and pertinent, yet the examination should not be circumscribed by any narrow or technical rule, but should be broad and liberal in its scope so as to attain the end intended by the insertion of such a clause in the policy.

The insured should make a full and complete disclosure, so that such matters could be speedily adjusted, and not necessitate a long and tedious, and often unsuccessful, lawsuit.  It has become quite the custom for the insured and the insurer, after a loss by fire, to approach each other in a hostile attitude, which is to be deplored, because the insured ought to be able and willing to make a complete disclosure, and should be met by the company with a desire to pay all legitimate claims without resorting to technicalities without merit.

We are of the opinion that the questions propounded as to the execution of the chattel mortgages were directly pertinent to the issue because they would certainly have a

stronger influence and bearing on a very vital issue, a determination of which would enable the company to decide upon its liability and avoid a lawsuit if its liability appeared.

It follows that the court's instruction that the insured's failure to answer questions which pertained to property other than that included in the policy would not bar a recovery in this action was also error. Taking this view of the case, it will be unnecessary to pass upon other questions presented.

For the reasons given, the judgment should be reversed, and the case remanded, with instructions to the trial court to dismiss the action, because it appears the same was prematurely brought.

By the Court: It is so ordered.