## GEORGE et al. v. CONNECTICUT FIRE INS. COMPANY.

No. 9938—Opinion Filed July 5, 1921.

Supplemental Opinion Filed Sept. 29, 1921.

Rehearing Denied Jan. 10, 1922.

(Syllabus.)

*1.* **Insurance—Statutory Limitation of Actions.**

A provision in a standard insurance policy provided by the laws of this state reads as follows: "No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements, nor unless commenced within twelve months next after the loss occurred." Held, this constitutes a statutory limitation, and not a contractual limitation.

**2. Same—Right File Second Suit After Reversal.**

That said provision does not come within the purview of section 4654 and is not an exception nor a special case with a different limitation as is contemplated by the said section of article 2 of the Revised Laws of Oklahoma 1910, but is controlled by section 4662 of said chapter, which permits the filing of a second suit within one year after reversal or failure of a first suit commenced within the time limit.

On Rehearing.

**3. Insurance—Fire Policy—Classes of Property—Divisible Contract.**

In this jurisdiction the general rule is, where an insurance policy is issued and different classes of property are insured, each class being separate from the other, and insured for a specific amount, the contract should be considered as a divisible contract.

**4. Same—What Comprised in Proof of Loss —Examination of Assured.**

The personal examination of the assured, reserved to the company by the condition of the policy in the instant case, formed no part of the proof of loss provided by the policy. The right to so examine was a privilege reserved to the company, which they could exercise or not as they might choose, but was not a duty imposed on the assured.

**5. Same — Refusal of Assured to Answer Questions—Effect.**

The fire insurance policy in the instant case contained a provision requiring the assured to submit to an examination, when requested by the company, and further provided that no suit should be sustainable until full compliance with the terms of the policy. The assured submitted to an examination, but refused to answer certain questions, upon advice of his counsel contending the same were immaterial; there-

after suit was instituted upon the policy and defendant pleaded a breach of the conditions of the policy by assured's refusal to answer certain questions. Held, the refusal to answer material questions was considered not to work a forfeiture of the policy when the policy contained no such provision, but the plaintiff would have no right to further prosecute his action until such questions were answered.

Error from District Court, Kay County; Wm. M. Bowles, Judge.

Action by William George and another against the Connecticut Fire Insurance Company, of Hartford, Conn., on fire insurance policy. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with directions.

William S. Cline, for plaintiffs in error.

John W. Scothorn and Albert L. McRill, for defendant in error.

George B. Rittenhouse, F. A. Rittenhouse, John F. Webster, and P. T. McVay, amici curiae.

ELTING, J. On December 18, 1911, Joe George, one of the plaintiffs in error in this suit, sustained a loss by fire. The property so lost was insured under an insurance policy issued by the Connecticut Fire Insurance Company, of Hartford, Connecticut, a corporation, which is the defendant in error in this suit.

On the 3rd day of January, 1912, Joe George assigned his interests under said policy to William George, who appears as the other plaintiff in error herein. Shortly after said loss, the insurance company demanded of Joe George that he submit to an examination pertaining to the property insured and the loss sustained by the fire, under the following provision of the insurance policy:

"The insured shall also produce all the remains of the property hereby insured, whether damaged or not, and exhibit the same for examination and submit to examination under oath and subscribe to same, to any person named by the company."

Joe George submitted to an examination under oath, but refused to answer certain questions demanded to be answered by the company. At the close of the said examination, the following colloquy took place between Joe George and the attorney for the insurance company:

"Q. There is on file in the office of the register of deeds of Kay county, Oklahoma, chattel mortgage No. 45687, given by Joe George to Dan Bunnell, and covering four horses, eight cattle, three hogs, one wagon, one cultivator, and one buggy said mortgage being given to secure payment of the sum

of $296.45. Did you give that mortgage? A. I have nothing to say. Q. Do you refuse to answer the question? A. I have nothing to say. Q. Then permit me to state to you that the Connecticut Fire Insurance Company here and now insists and demands that you answer said question and if you refuse to do so, such refusal must be under the pains and penalties provided in your insurance contract, No. 702538. Do you still refuse to answer the question? A. I have nothing to say. Q. Inasmuch as you refuse to answer my questions asked on behalf of said Connecticut Fire Insurance Company, I am unable to proceed further with this examination. Are you willing to sign the typewritten transcript of the proceedings here today? A. I do not refuse to answer any reasonable question that in any way pertains to the matter before us, and I am still ready to answer any questions propounded to me which in reason have any relation or bearing upon the insurance policy or property insured, but I do refuse to give the insurance company a complete history of my life and my family relations. I am willing to sign the said evidence as taken."

This questioning shows the nature of said examination, and the attitude of the insurance company, also the attitude of the insured.

After said examination, closing in the manner above stated and on, to wit, March 29, 1912, and within one year from the date of the fire, William George and Joe George filed suit in the county court of Kay county, state of Oklahoma, against the insurance company, defendant in error herein, upon said insurance policy to recover the loss incurred by reason of said fire. In said suit plaintiffs in error recovered judgment against the insurance company. From the judgment in the county court, the insurance company appealed to the Supreme Court and asked that said judgment be reversed and ordered dismissed by the Supreme Court for the reason that the insured, Joe George, had breached the provision of the insurance policy, heretofore quoted, by failing to answer certain of the questions propounded to Joe George in the examination, and in the manner shown by a portion of the examination given above. The Supreme Court sustained the contentions of the insurance company in said appeal, reversed the judgment of the county court, and ordered the dismissal of the suit of Joe and William George by the county court for the reason that Joe George, by refusing to answer the questions, had breached the examination provision of the policy as given above, and hence the suit was prematurely brought. The date of the opinion by the Supreme Court was the 19th day of November, 1915,

and is found in 52 Okla. 432, 153 Pac. 116, entitled Connecticut Fire Ins. Co. v. George et al.

The following is the fifth paragraph of the syllabus of the case first decided by the Supreme Court:

"5. In the application for an insurance policy, it was stated that the property was incumbered by chattel mortgage for $400. After the loss, there was found to be of record four chattel mortgages executed by the insured in a sum far in excess of $400, covering the same or similar property as that embraced in the policy. At the examination, the insured refused to answer whether or not he executed these mortgages. Held, the questions were pertinent and material to the issue, and the insured was precluded thereby from maintaining an action upon the policy until the questions were answered in an examination held according to the terms of the policy."

On the 3rd day of January, 1916, in compliance with said mandate, the judge of the county court vacated and set aside the judgment procured by the plaintiffs in error herein against the defendant in error herein, the insurance company, and dismissed the action of the plaintiffs in error in the county court.

On December 14, 1915, Joe George notified the attorneys of the Connecticut Fire Insurance Company, in writing, of his willingness to submit to an examination under oath, and in pursuance of the provisions of the insurance policy and the decision of the Supreme Court. The insurance company declined to accept the insured's offer for an examination, and on the 25th day of February, 1916, the insured filed a suit in the district court of Kay county, Oklahoma, against the insurance company, defendant in error, for the loss sustained by the fire, alleging the same cause of action that they did in the prior suit in the county court.

On the 4th day of March, 1916, the defendant in error filed a demurrer to the plaintiffs in error's petition filed in the district court of Kay county and on the 23rd day of November, 1917, the judge of the district court of Kay county sustained the demurrer of the defendant in error to the petition of the plaintiffs in error. The cause is now in this court for review for alleged error of the trial court in sustaining said demurrer.

The contentions of the defendant in error in said demurrer and the ruling of the trial court sustaining the same were based upon the following provision of the insurance policy:

"No suit nor action on this policy for the recovery of any claim shall be sustained in

any court of law or equity until after full compliance by assured with all the foregoing requirements, nor unless commenced within twelve months next after the loss occurred."

The contentions of the defendant in error, in substance, were that the effect of the holding of the Supreme Court was that, since the assured had failed to comply with the provision as to the examination at the instance of the insurance company within the year, he thereby had no cause of action, and that the filing of the first suit was not a compliance with the above-quoted provision requiring suit to be filed within twelve months from date of fire, and that the second suit was not a continuation of the former suit and was based upon no cause of action, hence the trial court committed no error in sustaining the demurrer.

The plaintiffs in error contend, in answer thereto, that the dismissal of the first suit by direction of the mandate of the Supreme Court justified them in filing their second suit, that they still had a cause of action subsisting in their favor and against the insurance company, and that their offer to comply with the provisions of the insurance policy and as directed by the Supreme Court and pertaining to an examination under oath, and the refusal of the company to accept said offer was sufficient to save the rights of the insured, and that the company waived said requirement and that said offer to submit to such examination being made within one year of the reversal of the cause in the Supreme Court and their cause not having been tried upon its merits, they had a right within one year to refile their suit and have said cause tried upon its merits. In support of this proposition, they invoked section 4662, Revised Laws of Oklahoma 1910, which reads as follows:

"Limitation of New Action  If any action be commenced within due time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if he die, and the cause of action survive, his representatives, may commence a new action within one year after the reversal or failure."

The holding of this court is that the contentions of the plaintiffs in error in the instant case are correct, and that the trial court committed error in sustaining the demurrer of the defendant in error, and that the plaintiffs in error were entitled to a trial upon the merits of their claim against the insurance company. We think the situation shown by this record brings the instant case within the above section of our statutes. The cause of action of the assured in the instant case arose at the time the fire occurred and the loss was sustained, and continues as a subsisting cause of action until barred by limitation. Shortly after the fire and after notice the insured appeared and submitted to an examination. The insured contends that by so doing he complied with the requirements of the policy, but which the insurance company contended was not a compliance therewith. Within one year after the loss the insured filed a suit. The insurance company contended in that suit that there was not a compliance with the provisions of the insurance policy and that the suit should be dismissed. The insured contended that he had complied. The trial court, on the first trial, sustained the contention of the insured and overruled the contention of the insurance company. Upon appeal to the Supreme Court, the contentions of the insurance company were sustained and those of the plaintiffs in error were overruled, and as a result of the holding of the Supreme Court the suit in the county court was dismissed. To such a situation section 4662, supra, is applicable. See the following authorities: Myers v. First Presbyterian Church of Perry, 11 Okla. 544, 69 Pac. 874; Wilson v. Wheeler, 28 Okla. 726, 115 Pac. 1117; Hatchell v. Hebeisen et al., 16 Okla. 223, 82 Pac. 826; Myers v. Coonradt, 28 Kan. 151; Taylor v. Miles, 5 Kan. 302; Scroggs et al. v. Tutt et al., 23 Kan. 127; McWhirt v. McKee, 6 Kan. 248; Seaton et al. v. Hixon et al. (Kan.) 12 Pac. 22; Smith v. Board of County Com'rs, Bourbon Co. (Kan.) 23 Pac. 642.

We have examined the case of Giles v. Willmott (Fla.) 52 South. 287, and 81 South. 106, which the attorneys for the defendant in error discuss very extensively in their brief and hold to be in point. We find that it has no application to the case at bar. This was an action by a business solicitor for a division of commissions by real estate brokers. The facts appear to have been that the brokers were not to divide the commissions until they had received the same and they defended upon this theory in a suit by the solicitor, and the court merely held that the solicitor had no cause of action against the brokers until they received the commissions. If they never collected the commissions, they would not owe the solicitor anything. He might never have a cause of action. The condition precedent to the bringing of the suit inhered in the cause of action. Not so in the instant case. The cause of action arose, in the instant case, at the time of the loss.

The following is the second paragraph of

the syllabus of the case of Wever v. Pioneer Fire Ins. Co., 49 Okla. 546, 153 Pac. 1147:

"Where a standard form of policy of fire insurance contains the provision that no suit or action shall be sustainable in any court of law or equity unless commenced within 12 months next after the fire, the period of limitation begins to run from the date of the fire, notwithstanding the policy also contains a provision that 'the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

The contention of the defendant in error is that the opinion of this court in the former appeal destroys the cause of action of the plaintiffs in error. We do not think that the law as laid down by this court in the former appeal of this cause is such as to hold that the failure to comply with the requirements of the policy by the assured within one year destroyed said cause of action. And the holding of the court on the first appeal was not that a compliance with the condition of the policy that is in question herein inhered in the cause of action; in other words, that its breach destroyed the cause of action, or that its breach prevented a cause of action from arising in favor of the insured. The effect of the opinion was merely to hold a failure to comply prevented an enforcement of the cause of action until such a time as the condition had been complied with. The closing words of the 5th paragraph of the syllabus are as follows:

"Held, the questions were pertinent and material to the issue, and the insured was precluded thereby from maintaining an action upon the policy until the questions were answered in an examination held according to the terms of the policy."

If it had been the purpose of this court to hold in the first appeal that a failure to comply with the examination provision within one year would destroy the cause of action, the court would then have directed, no doubt, a different judgment than the one they did direct, fo the reason that the one year had expired at the time the opinion was handed down, and would, in that event, have directed a dismissal with prejudice.

Section 4654, art. 2, Rev. Laws 1910, reads as follows:

"Limitations Applicable. Civil actions can only be commenced within the periods prescribed in this article, after the cause of action shall have accrued; but where, in special cases, different limitation is prescribed by statute. the action shall be governed by such limitations."

Under the above provision of the statutes it might be suggested that the standard policy provided for by our statute on Insurance, having this limitation provision included in it, would be a special case and a different limitation prescribed therein, and hence the tolling provision, relied upon by the plaintiffs in error in this case, would not apply thereto. The opinion rendered by Valentine, Justice, in the case of Beebe and Another v. Doster (Kan.) 14 Pac 150, might be interpreted to hold section 4654 not applicable to this insurance provision, and being a special provision with a differing limitation, that the tolling provision did not apply. An investigation of that case, however, shows that it was applied to tax limitations pertaining to tax deeds and we do not think it is any way persuasive upon the determination of this matter.

The following is the first paragraph of the syllabus of the case of Wever v. Pioneer Fire Ins. Co., 49 Okla. 546, 153 Pac. 1146:

"The provision in the standard form of fire insurance policy, provided for in section 3481, and contained in section 3482, Rev. Laws 1910, that 'no suit or action on this policy, for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements, nor unless commenced within twelve months next after the fire,' is unambiguous, and in an action on the policy commenced more than 12 months after the date of the fire, will be enforced in accordance with the plain meaning of its terms where no extrinsic facts are alleged excusing delay in instituting the action."

The law of this syllabus is to the effect that the limitation clause of the standard policy does not inhere in the cause of action, and may be relieved against upon a proper showing.

There seems to be a conflict in the courts as to applying the tolling provision of a limitation statute, such as is provided in section 4654 of our Code of Civil Procedure, to limitations provided by contract or by special statute. In 17 R. C. L. 813, after stating that the tolling provision applies to the limitations provided in the Code of Civil Procedure, we find the following:

"But as to whether a later action, brought after the period of limitation has expired, under a general permissive statute in that behalf, is saved from prescription by the bringing in due season of an earlier action for the same cause, when the parties have fixed by their contract, or a statute of particular application has prescribed, a special limitation, the courts differ."

We find the following note to the case of Terre Haute & I. R. Co. v. Zehner (Ind.) 3 L. R. A. (N. S.) 294:

"As to whether a later action, brought after the period of limitation has expired, under a general permissive statute in that behalf, is saved from prescription by the bringing in due season of an earlier action for the same cause, when the parties have fixed by their contract, or a statute of particular application has prescribed, a special limitaton, the courts differ    Several, perhaps the majority, are of opinion that the saving statute does not apply. Some think it does. And, notwithstanding their numerical inferiority, the latter appear to have the better reason on their side."

Here are some of the cases supporting the proposition that the permissive statute does not apply: Harrison v. Hartford F. Ins. Co., 102 Iowa, 112, 47 L. R. A. 709, 71 N. W. 220; Wilhelmi v. Des Moines Ins. Co., 103 Iowa, 532, 72 N. W. 685; Grier v. Northern Assur. Co., 183 Pa. 334, 39 Atl. 10; De Both v. Rich Hill Coal & Min. Co., 141 Mo. 497, 42 S. W. 1081; Revelle v. St. Louis, I. M. & S. R. Co., 74 Mo. 441; Gerren v. Hannibal & St. J. R. Co., 60 Mo. 405; Parmeloe v. Savannah, F. & W. R. Co., 78 Ga. 239, 2 S. E. 686. Some of those holding that it does apply are as follows: Titus v. Polle, 145 N. Y. 414, 40 N. E. 228; Connolly v. Hyams, 176 N. Y. 403. 68 N. E. 662; Meekins v. Norfolk & S. R. Co., 131 N. C. 1, 42 S. E. 333; Hamilton v. Royal Ins. Co., 156 N. Y. 327, 50 N. E. 683, 42 L. R. A. 485; Hayden v. Pierce, 144 N. Y. 512.

The first two cases cited above (the two Iowa cases) overrule the case of Jacobs v. St. Paul Fire & Marine Ins. Co. (Iowa), found in 53 N. W. 101, which last case had held that the permission statute did apply to a conventional limitation.

The case of Hamilton v. Royal Ins. Co., 156 N. Y. 327, 50 N. E. 863, 42 L. R. A. 485, is a case well reasoned, involving virtually the same proportions involved in the instant case. The statutes of the state of New York fixed a standard policy, containing a similar provision to the standard policy of this state, and required the commencement of a suit within 12 months after the fire. The fire in the New York case happened on the 16th day of January, 1892. The summons was put in the hands of the sheriff for service on the 14th day of January, 1893, but was not served until the 17th day of January, 1893, one day over a year after the fire. The insured contended that the putting of the summons in the hands of the sheriff was a compliance with section 399 of the Code of Civil Procedure of New York, which section of the Code provides that an attempt to commence an action in a court of record is equivalent to a commencement of the action. The insurance company contended that the provisions of the Code of Civil Procedure did not apply to a limitation fixed in a contract by the parties, and that suit was not commenced until actual service was had upon the insurance company. If that rule was sustained, the suit was not begun in time under the stipulation provided in the contract for insurance. The court held that the Code of Civil Procedure applied, and that the putting of the summons in the hands of the sheriff commenced the suit and satisfied the provisions in the contract of insurance. The said case, quoting from page 487 of 42 L. R. A., states the following reasons for its holding:

"Although it must be admitted that the precise question under consideration did not arise in either of the cases cited, still they involved the principle under discussion, and also plainly show that the opinion of this court was that the general provisions of chapter 4 apply as well to limitations prescribed by the written contract of the parties as to those where a different limitation is specially prescribed by law. The reasoning which shows the necessity for their application in one class of cases is equally applicable to the other, and the same rule should be applied to each.

"It is obvious that by section 414 the Legislature intended to and did recognize the right of parties, by their written contracts, to prescribe a shorter limitation for its enforcement than that contained in the general limitations of the Code. It is equally clear that it intended to make the limitation prescribed by special statute, or by contract of the parties. a part of the general law controlling the limitation of actions, and to make all the rules of limitation recognized by that act subject to the general provisions of chapter 4. Any other rule would result in unsettling the law, and in many cases would work the greatest injustice. If those general provisions are not applicable to such a case, then we have a plain and definite system of law which governs one class of limitations, but no law of procedure whatsoever applicable to the other classes.

"The language of section 399 is sufficiently broad to include the limitation in this case, as it declares that its provisions are applicable to each provision of the act which limits the time for commencing an action. When that    section provides that a summons delivered to the sheriff of the proper county to be served is equivalent to the commencement of an action within the provisions of the act, it must have been intended to include limitations by contract, as that is one of its provisions limiting the time within which an action may be begun. Who, reading that statute, which plainly recognizes a limitation by contract would for a moment suppose that the

delivery of a summons to the sheriff of the proper county with the intent that it should be actually served was not a commencement of the action in such a case. If it was not for the purpose of this statute that it should apply to such a case, then its effect is to create a snare to the unwary party and practitioner.

"* * * What acknowledgment or new promise is necessary to relieve from the limitation? If these provisions do not apply to limitation by contract, then it necessarily follows that there is no law applicable to such a limitation or to regulate the procedure for its enforcement. When the parties entered into this agreement they have considered it in the light of the general provisions of the existing law relating to the subject. It must be presumed that the parties knew the law, and intended to make their contract in pursuance of it and that those general provisions were understood and considered by them when the policy was issued. Indeed, it would be unreasonable to suppose that when they provided for a shorter limitation it was not intended to be controlled and governed by the general provisions of the law relating to the subject, which were not in conflict with their agreement. especially when they are necessary to an orderly and uniform enforcement of the law."

The defendant in error, in this case, cannot contend that this is a limitation provided by. a private contract. As such, it would be void, since in contravention of the laws of this state. See the following Oklahoma cases: Keys & Keys v. Williamsburg City Fire Ins., of Brooklyn, N. Y., 37 Okla. 482, 132 Pac. 818; Seay v. Commercial Union Assurance Co., Limited, of London, Eng., 42 Okla. 83, 140 Pac. 1164. To uphold the same and invoke it, in this case, they must sustain it upon the ground that it is a statute of limitations provided by the Legislature of this state, and such we hold it to be.

In the New York case that we have just cited, they held that even if the provision was held to be a limitation fixed by contract, the provisions of the Code of Civil Procedure and pertaining to limitations applied to it. But they held, as we hold in this case, that being provided in a standard policy fixed by the law of the state. the provisions in the general Code as to limitations applied to it also, and in the sense that it was a statutory limitation. The language of the cited opinion then stated:

"Practically, then. the limitation in this case was especially prescribed by law, and hence so directly within the principles of the decisions of the court in the Hayden and Litus Cases. Therefore, the conclusion that section 399 is applicable to and

governs this case, and that the summons was served in time, and the action properly commenced, should be sustained both upon principle and authority."

The New York case then takes up and discusses very fully the case of Wilkinson v. Insurance Company, 72 N. Y. 499, and holds that the ruling in that case does not contravene the ruling in the case we have been discussing. This is important for the reason that in the case of McElroy v. Continental Ins. Co. (Kan.) 29 Pac. 478, Simpson, Commissioner, refused to apply the tolling provision to an insurance policy containing the 12 months' limitation. He cites and quotes from the Wilkinson Case and seems to make it the main basis of the holding. We are disposed to follow the holding in the New York case rather than the holding in the Kansas case, for the reason that we think it comports more with equity, right, and reason, and we do this notwithstanding the fact that our statutory limitations are adopted almost verbatim from the Kansas Code of Civil Procedure.

Judge Sanborn refused to apply the tolling provision of the statute of this state in the case of Partee v. St. Louis & S. F. R. Co., found in 204 Fed. Rep. 970. The tolling provision was sought to be applied to a special statutory cause of action which provided that an action must be commenced within two years after the wrongful act or death. The suit in that case was commenced within the two years, but failed otherwise than upon the merits. Another suit was begun after the expiration of the two years from the date of the wrong, and the circuit judge held that the cause of action had expired and that the limitation provided in the special statutory cause of action inhered in the cause of action, and that the cause expired with the limitation.

Martin, Justice, who wrote the opinion in the New York case that we have been discussing, and cited above (Hamilton v. Royal Ins. Co., 156 N. Y. 327, 50 N. E. 683) differentiates the kind of a case that he was discussing and the kind of a case such as we have in the instant case, from the one like the one decided by Sanborn, Circuit Judge, in the following language:

"Nor do we regard the decision in Hill v. Rensselaer County, Supervisors, (119 N. Y. 344), as adverse to or in conflict with the conclusion we have reached. In that case the right sought to be enforced was a special right for which a special remedy was given and a special limitation provided, and under the well-settled principle that where a new right is given or a new power conferred, by statute, and the means of exe-

cuting it are granted, it can be executed in no other way than as provided by the statute, it was held that the limitation was so incorporated with the remedy as to become a part of it, and constituted a condition precedent to the maintenance of the action. It is doubtless true that where time is the essence of the right created, and a limitation as to the time of its enforcement is a part of the statute under which the right arises, so that there is no right of action independent of the limitation, the limitation extinguishes the right rather than affects the remedy, and such contracts are not subject to the exemptions contained in the statute of limitations. It was upon that principle that the Hill Case was decided, and it has no application to the case at bar."

We have been unable to discover that this court has ever decided the exact question involved herein, and it seems to be up to this court to set a precedent. There has been no case by this court that we have discovered, or that has been pointed out to us, that lays down a proposition that conflicts with our holding herein. If this court had established a precedent different from the holding made herein, and we knew what it was, we would be inclined to follow it. To repeat, not knowing of such a holding in conflict with our holding herein, our disposition is to follow the holding that appeals strongest to our view of the best reason for the rule.

Our holding is that section 4662 applies in the instant case and that the plaintiffs in error have one year after the reversal of their suit by the Supreme Court in which to file the second suit; they having done so, the trial court committed error in sustaining the demurrer.

This cause is, therefore, reversed and remanded with directions to overrule the demurrer and proceed to a trial of the cause.

PITCHFORD, V. C. J., and McNEILL, MILLER, and NICHOLSON, JJ., concur.

Supplemental Opinion, Sept 29, 1921.

ELTING, J. At the time the foregoing opinion was prepared by the writer, we were unable to find any Oklahoma decisions passing upon the question of tolling limitations to special statutes, and it is stated in the body of the above opinion that we were setting a precedent in this case, but we find, however, that this question has been passed upon by this court in the case of Bean v. Rumrill, 69 Oklahoma, 172 Pac. 452, opinion by Stewart, Commissioner; opinion filed February 5, 1918, and motion for rehearing overruled April 30, 1918. The following portions of said opinion are given, and set out the portions of the holdings applicable to the propositions involved in the above opinion in case of George et al. v. Connecticut Fire Insurance Co.:

"We next consider the proposition of the defendant that plaintiffs' cause of action is barred by limitation. The original action in this case was begun January 6, 1915. The notes were due May 26, 1912. The judgment was paid by proceeds of sale of the property May 12, 1913. The Constitution, with reference to usury, among other things, provides: 'In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm, or corporation taking or receiving the same, in an action in the nature of an action of debt, twice the amount of the interest so paid: Provided, such action shall be brought within two years after the maturity of such usurious contract.' Article 14, § 3.

"In section 1005, Rev. Laws 1910, will be found the same language, and such is at present both the constitutional and statutory law of this state. Section 4660, Rev. Laws 1910, reads: 'If, when a cause of action accrues against a person, he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed; and if he depart from the state, or abscond, or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought.'"

The defendant in the cited case was a nonresident of the state, and was absent from the state at the time the cause of action accrued, and was continually absent since the accrual of the cause of action. We give the further extract with fullness, for the reason that the rule that we have sought to apply in the above opinion is fully discussed and the law applied. We think this is of sufficient importance that this supplement to the opinion should be printed in the reports, and we ask that this supplement be added in the nature of a footnote, or otherwise, to the above opinion:

"But it is urged that the cause of action in the present case arose because of a special statute providing a remedy which did not exist at common law, and that therefore the limitation is a part of the remedy, and follows it into any forum where action may be lodged. At common law an action of debt could be maintained to recover interest paid in excess of the legal rate. Our enactment merely enlarges the common-law remedy. The nature of the remedy is specifically preserved; it being provided that the remedy is by 'an action in the nature of an action for debt.' The reasonable inference is that it was the intention of the lawmakers that the same rules with reference to tolling the statute of limitation should apply as obtains in any other action for debt. In this connec-

tion we call attention to section 2948, Rev. Laws 1910, which reads:

" 'The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice.'

"It is evident that the statute in question is to be construed, not strictly, but liberally, with a view to effect its objects and to promote justice. The common law is not such a monarch that the duly accredited representatives of the people must stand in awe of its stern mandates. It deserves respect as the garnered wisdom of the ages, but its principles came by gradual development and as a result of progressive departures from existing customs. Must our lawmakers and the courts, with oriental devotion, live only by worship of the ancestral glories of the law? If so, then stagnation follows, and the stream of progress must cease to flow.

"It is urged by defendant that the law authorizing the recovery of twice the amount of usurious interest paid is constitutional, and does not contemplate the modifying provisions of section 4660, supra, tolling the limitation in case of absence from the state.

"The remedy is authorized by the Constitution, and is now both constitutional and statutory, but we have a right to assume that, in naming the time within which the action shall be brought, it was contemplated that such limitation should be modified by the same tolling provision which applied to other causes of action. Added force is given to this suggestion by section 2 of the schedule to the Constitution, which reads:

" 'All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law.'

"Section 4660, supra, was a part of the law of the territory at the time of adopting the Constitution, and has remained a part of the law of the state since such time and up to the present. It is not repugnant to the Constitution in any respect. The section is general, and by its terms applies to any cause of action, to a statutory as well as a common-law action. The limitation provided for actions for the recovery of usurious interest is not dissimilar to, and is in pari materia with, other provisions as to time within which other actions may be brought. The object of the usury law was to promote justice among men and to protect necessitous citizens from the avarice of those who are more fortunate in the possession of money, from nonresidents as well as residents of the state. Would its beneficent objects be served and justice be promoted by giving nonresident lenders of money an advantage over residents engaged in the same business

or by refusing relief to citizens of the state, when the opportunity is presented, against nonresidents on the same terms as against residents? If this court should so hold, it would result that those bent on evading the usury laws, would procure so-called nonresident principals in whose names loans would be made, and the objects of the law would be defeated.

"Section 5281, Rev. Laws 1910, creates a remedy for wrongful death which did not exist at common law, and provides that 'the action must be brought within two years.' Such section, we believe, has not been construed by this court in relation to the tolling of the time, because of absence from the state within which such action may be brought. This identical question was, however, presented and passed upon by the Supreme Court of Minnesota in an able opinion by Mr. Chief Justice Start of that court. Casey v. American Bridge Co., 116 Minn. 461, 134 N. W. 111, 38 L. R. A. (N. S.) 521.

"The plaintiff in that case brought action against the bridge company on account of the death of her husband, alleged to have resulted from the wrongful act of the defendant while constructing a bridge in Oklahoma. More than two years had elapsed since the death, and the defendant, a corporation, nonresident of Oklahoma, set up the limitation in the section as to time within which the action might be brought as a bar. The court construed the section of our statute which creates the remedy, in connection with section 4660 supra, and held that the limitation was modified by the tolling provisions of section 4660, and that the cause of action was not barred. The court said that the two sections were each parts of our Code of Civil Procedure, but the decision, in the main, hinged on other reason showing that the respective sections were in pari materia. Sections 4660 and 5281, Rev. Laws 1910, are identical with paragraphs 21 and 435, respectively, of the Code of 1893. The court, in rendering the opinion, cited the Code of 1893. We quote as follows:

" 'It is true that, where a right of action is given by statute, which did not exist at common law, and the statute giving the right of action also fixes the time within which it may be enforced, such time limit is a condition or limitation upon the right, which will control, no matter in what form the action is brought. Negaubauer v. Great Northern R. Co., 92 Minn. 184, 104 Am. St. Rep. 674, 99 N. W. 620, 2 Ann. Cas. 150. The conclusion, however, that the condition is not qualified by the provisions of section 21, does not logically or otherwise follow from the premises for the conclusion assumes the very question to be decided; that is, whether section 21 qualifies the time limit or condition of section 235.'

"Continuing, the court further says:

" 'There is, then, nothing in the language of the respective sections indicating any reason why the tolling provision of section 21

should not apply to section 435. Why, then, should an exception be added, by construction, to section 21, so as to exclude from its express provision the cause of action given by section 435? Why should not the widow have the same fair opportunity to bring her action for damages sustained by the death of her husband by the wrongful act or neglect of another after the defendant comes into the state as she would have if her cause of action were for the loss of a mule killed by the wrongful act or neglect of another? The fact that the action for the death of her husband is a statutory one, and the action for loss of the mule is a common-law one, does not answer the question, for it relates, not to the creation of the cause of action, but to the construction of the tolling provisions of section 21.'

"Under the admitted facts in this case as to nonresidence and absence, the action was not barred by limitation. This holding would render it unnecessary, so far as a final determination of this appeal is concerned, to decide whether or not the time of the limitation in this case would run from the date of the discharge of the usurious contract, but, as the question is properly raised, and is important, we will consider the same."

### On Rehearing.

McNEILL, J. A very elaborate brief has been filed in support of the second petition for rehearing, and a proper consideration of the same necessitates not only a consideration of the opinion in this case, but also a consideration of the opinion on the former appeal, being Connecticut Fire Ins. Co. v. George, 52 Okla. 432, 153 Pac. 116. We think the former opinion failed to consider several material questions that should have been considered and were raised by the brief in said case, and are necessary to be considered at this time in reaching the right conclusion upon this second petition for rehearing.

The policy involved was for insurance in the total amount of $2,000 and divided as follows:

(1) $200 on household and kitchen furniture, etc., "while contained in above-described dwelling house;" (2) $150 on iron and board roof frame barn No. 1, with shed attached, including foundation; (3) $250 upon grain, corn, ground feed, and seed while in building or in stacks on farm: (4) $100 on farming utensils, wagons, harness, saddles, etc., while in building on farm; (5) $350 on hay, straw, fodder, and flax while in building or in stacks on farm; (6) $800 on horses, mules, and colts anywhere; (7) $150 on cattle anywhere. This action was brought to recover loss of: (1) Household furniture; (2) grain; (3) certain farming utensils; (4) hay.

In the former appeal this court treated the policy as an inseparable contract and that a violation or breach of the conditions of the policy, in so far as it related to one class of property, would render the entire policy void. In this we think the court committed error and overlooked the former decision of the territorial Supreme Court, to wit, Miller v. Delaware Ins. Co. of Philadelphia, 14 Okla. 81, 75 Pac. 1121, wherein the court stated as follows:

"Where an insurance policy is issued, and different classes of property are insured, each class being separated from the others, and insured for a specific amount, and there is a breach of the conditions of the contract as to one class of the property insured, the contract should be considered not as one entire in itself, but as one which is severable, and in which the separate amounts specified may be distinguished, and a recovery had for one or more of them without regard to the other, provided the contract is not affected by any question of fraud, act condemned by public policy, or any increase of the risk of the company on the whole property insured because of the breach."

The identical question was before the Supreme Court of West Virginia in the case of Bond v. National Fire Ins. Co. of Hartford, Conn., 97 S. E. 692, and the court said:

"A fire insurance policy covering different classes of property, separately valued, containing a condition or warranty relating to one class of property only, and not affecting the risk as to another, is a divisible contract, and is not avoided in its entirety because of a breach of such condition or warranty, notwithstanding a stipulation in the policy that it shall become void in toto upon a breach by the insured of any one of its conditions."

In the body of the opinion the court stated as follows:

"Whether in such case the policy is divisible or entire, there is much conflict in the authorities. There are three distinct rules relating to the question, each finding support in the decisions of the various courts of this country. One rule is that if the premium is paid in gross, even though the property insured is separately valued, the contract is entire; another that if the property is separately valued the policy is divisible even though the premium is in gross; and still another rule is, where the property is separately valued the divisibility of the policy depends upon whether the property is so situated that the risk on one item of it affects the risk on the others. If a provision or warranty in a policy relating specially to one item of property separately valued affects the risk of all, the policy is regarded

as entire, whether the premium is separate or in gross; but, if it does not so affect the risk on all the property insured, the policy is divisible."

The Supreme Court of Michigan, in the case of Benham v. Farmers' Mutual Fire Ins. Co., 131 N. W. 87, L. R. A. 1915D, 736, stated as follows:

"A policy insuring for a single premium specified sums on the dwellings on a farm and its barns, sheds, furniture, products, equipment on the premises, and live-stock anywhere in certain specified counties, is divisible, and the insurance on the personalty is not avoided by breach of warranty as to condition of chimneys on the dwellings and the placing of an incumbrance on the realty without authority, except so far as it is contained in the buildings as to which the risk is increased."

The cases supporting the rule above announced are annotated in 2 Am. & Eng. Ann. Cas. 22; in the note the annotator stated as follows:

"When these rules have come to be applied to a contract for insurance on different pieces of property, there has been contrariety of opinion. It seems to be conceded in general terms that, where the contract is entire, a breach of conditions affects all the property at risk, but as to what makes an entire contract there is not uniformity of ideas. It is doubtless a sound rule that where by a policy upon several separate and distinct classes or species of property, each of which is separately valued, the sum total of the valuation is insured on payment of a premium in gross, the contract is severable; and a breach of a condition avoiding the policy as to one of the items does not affect it as to the others if there is nothing in the terms, in the nature of the contract or of the different subjects of the insurance, or in the surrounding circumstances, from which it can be inferred that the insurer would not have been likely to have assumed the risk on one or several of the subjects of the insurance, unless induced by the profit or advantage of having a risk upon all, and if the breach as to one item of property does not increase the risk as to the balance."

The annotator, in support of this rule, states as follows:

"In Merrill v. Agricultural Ins. Co., 73 N.Y. 452, holding that a breach of a condition in a policy of insurance by placing incumbrances on buildings did not avoid the policy as to chattels in the buildings which were separately valued, the court in its reasoning points out the considerations which are determinative as to the divisibility of insurance contracts. There is nothing to show that an incumbrance upon the buildings would have been an objection to a risk on the chattel property, or that the opportunity of insuring on the buildings was the inducement to taking a risk also on the chattels. There is nothing in the nature or terms of the contract which make it so much an entirety as that it is at all difficult to tell the amount insured on the buildings, as distinguished from that at risk upon the chattels. There is nothing to show that had the chattels been insured, without insuring the buildings, the premium would have been greater or different. The risks are not necessarily indivisible; they may be dealt with in separate clauses, and are made up of distinct and independent sums on different and distinct properties. There may be reasons which, existing as to one class of the property insured, might deter an insurance company from taking a risk on any of the classes. Some such general cause, as fraud in the insured as to one class, would in its nature extend to the whole subject-matter of the contract, and vitiate and avoid the whole contract in all its parts. But it is difficult to conceive how an act, in itself not evil, though it may affect one of the classes of property insured, and so affect it as to increase the hazard, if it does not also increase the hazard on another class, should operate so as to impair the contract as to that latter class.' In Baldwin v. Hartford F. Ins. Co., 60 N. H. 422, it is held that an alienation by the insured, without notice, of one of several parcels of real estate covered by a fire policy containing a stipulation against alienation, avoids the policy as to property not alienated, unless the court can say as a matter of law that the risk of the remaining property is not increased."

As stated in the case of Bond v. National Insurance Co., supra, the different courts are in conflict as to whether the policy is a divisible contract or an inseparable contract. One line of decisions adheres to the rule that if the premium is paid in gross, even though the property insured is separately valued, the contract is entire. Another line adheres to the rule that if the property is separately valued, the policy is divisible, even though the premium is paid in gross. The other rule is the rule announced in the case of Miller v. Delaware Ins. Co., supra, to wit: Where the property is separately valued, the divisibility of the policy depends upon whether the property is so situated that the risk on one item affects the risk on the others, and if the items of property separately valued affect the risk on all the property, it is regarded as an entire contract, and if it does not so affect the risk on all the property, the policy is divisible.

The risk upon the horses, cattle, or upon the grain or farm implements would not affect the risk upon the household furniture. We think the court committed error in holding, which it necessarily did, that the policy was an inseparable contract.

We will next consider the correctness of the former opinion in so far as it ordered

the case dismissed. In considering this question there are two provisions of the policy necessary for consideration. The first provision is:

"The assured shall also produce all that remains of the property hereby insured, whether damaged or not, and exhibit the same for examination and submit to examination under oath and subscribe to same to any person named by the company."

The other provision:

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements, nor unless commenced within twelve months next after the loss occurred."

The courts are unanimous in holding that the provision in the policy requiring the insured to submit to an examination under oath is a binding and valid provision. The courts are likewise unanimous in the decisions in holding that when the insured submits to an examination, he is only required to answer material questions, and the failure to answer immaterial questions will not avoid the policy. Insurance Co. v. Weide, 81 (14 Wall.) U. S. 375; Porter v. Traders Ins. Co. of Chicago (N. Y.) 58 N. E. 641; Titus v. Glens Falls Ins. Co., 81 N. Y. 410.

In the instant case the insured submitted to an examination, but refused to answer certain questions. This court in the former opinion held the questions were material, and we think correctly so, in so far as the questions related to the insurance on the grain, wagons, harness, and saddle. The mortgages did not cover the household furniture, and the questions were not material in so far as they related to the insurance on household furniture. The questions which related to the insurance upon the cattle and horses were immaterial for the reason that portion of the policy was not before the court, and there was no attempt to collect for any loss on this claim or species of property.

The question for consideration is: Where a policy contains a provision requiring the insured to submit to an examination under oath, and contains a further provision that no suit shall be sustainable until the insured has complied with the terms of the policy, will the failure to answer material questions forfeit the policy? The general rule of law is that forfeitures are not looked upon with favor by the courts. The policy does not provide that a failure to answer a material question shall forfeit the policy, but provides no suit shall be sustainable until the provisions of the policy are complied with. The word "sustain" may be susceptible of several constructions. Webster defines "sustain" to

mean to "carry on", or to "maintain", and that is the general meaning of the term.

The policy itself is silent as to when this examination shall be held. It might be requested before suit was filed; it likewise may be requested after the filing of suit. It has been held, and we think correctly, in this kind of a policy that the personal examination of the insured is no part of the proof of loss provided for by the policy, but it is a right that is reserved to the company, which it can exercise as it may choose. Such was the holding of the Supreme Court of Illinois in the case of Winnesheik Ins. Co. v. Regina Schueler, 60 Ill. 465, where the court stated as follows:

"The personal examination of the assured, reserved to the company by the conditions of the policy, formed no part of the proof of loss provided by the policy, and it did not matter that such an examination was made more than 30 days after the loss occurred. The right to so examine was a privilege reserved to the company, which they could exercise or not, as they might choose, but was not a duty imposed on the assured."

We think the correct rule under policies which contain provisions similar to the one in controversy, where a difference arises over whether certain questions are material or immaterial, was announced by Judge Dillon in the case of Weide v. Germania Insurance Co., 1 Dillon's Reports, 441, where the court in the first syllabus paragraph stated as follows:

"Under certain provisions of a fire insurance policy, the refusal of the assured to submit to an examination on oath or to answer material questions respecting the loss, was considered not to work a forfeiture of the policy, but only to cause the loss not to be payable until this was done; and such refusal should be pleaded in abatement, and separately from defenses in bar."

The same view was taken by the Court of Appeals in New York in the case of Porter v. Traders' Ins. Co., 164 N. Y. 504, 58 N. E. 641, 52 L. R. A. 424; in that case the court stated as follows:

"The provision of the contract as to which a breach is alleged is the agreement of the insured to 'submit to examinations under oath by the person named by this company.' They did submit to examination. It cannot be claimed that they were bound to answer every question propounded, however irrelevant. They were bound to answer only such as were material, having in view the purpose of the condition. They had no guide as to what was or was not material, except their own judgment, acting, of course, in good faith. Even if they made a mistake in deciding that the inquiry with respect to the cost of the steamer was not material, it is no ground for visiting them with a forfeit-

ure of all the benefits of the contract, and the principle above suggested should apply.

"Finally, it should be noted that the condition alleged to have been violated in this case applied only after the capital fact of a loss. The object of the provision was to prescribe the manner in which an accrued loss was to be adjusted and ascertained. The liability of the defendant having become fixed by the happening of the event upon which the contract was to mature, conditions for ascertaining the extent of it, or for adjusting it, are not to be subjected to any narrow or technical construction, but construed liberally in favor of the insured."

The Supreme Court of Washington, in commenting upon the provision in the policy which provides that no action should be sustainable until the terms of the policy had been complied with, in the case of Barbour v. St. Paul Fire & Marine Ins. Co., 171 Pac. 1030, stated as follows:

"But, even if this were not so, when we look to the words of the policy, which it is well settled, must be strictly construed against the insurance company, we do not find that it provides that no action shall be 'commenced,' but that no action shall be 'sustainable.' At the time plaintiffs sought to sustain their action by proofs, the examination had been signed and was in the hands of the defendant. All that the policy required had been performed."

The Supreme Court of Texas, in the case of Humphrey v. National Fire Ins. Co., 231 S. W. 751, reviews most of the cases dealing with this identical question. The court followed the rule announced in the case of Weide v. Germania Insurance Co., 1 Dillon, 441, and under the practice in that state held that the failure to submit to an examination or answer material questions should be raised by a plea in abatement, and that a failure to raise the same by such a plea was a waiver of the defense. Under our practice it would be more appropriate to raise this defense by a motion to dismiss, and if the controversy arose over whether certain questions were material, if the court should decide the questions were material, the court should make an order requiring the insured within a certain time to answer such questions, and upon failure to answer said questions the court should dismiss the case, or if during the trial of the case the court should decide that the questions were material, the case should be continued and the insured given an opportunity to answer said questions before dismissing the case.

The courts have been very liberal in construing this provision of the policy and have never placed a technical construction upon the same. See Johnson v. Bankers Mut. Cas. Co. (Minn.) 151 N. W. 413, L. R. A. 1916

F, 1149; Gordon v. St. Paul Fire & Marine Ins. Co. (Mich.) 163 N. W. 956, L. R. A. 1918E, 402; Ins. Co. v. Rose, 228 Fed 290, 142 C. C. A. 582. To hold a refusal to answer questions which the insured and his attorneys in good faith believed were immaterial would work a forfeiture of the policy, without first giving the insured a right to comply with the same if he was honestly mistaken, would be placing a too narrow and technical construction upon the provisions of the policy. The case should be dismissed only after the court determines the questions in controversy are material, and the insured then refuses to comply with the orders of the court to answer said questions. This court in the former opinion should have ordered the case reversed, with directions to require the insured to answer those questions that were material, and upon his failure to do so then and not until then should the trial court dismiss the case in so far as it related to the insurance upon property covered by the mortgages, but in no event should the case have been dismissed in so far as it relates to the insurance upon the household furniture.

While the general rule is that the question decided by the Supreme Court on the former appeal becomes the law of the case in all its stages, and will not, ordinarily, be reversed on second appeal where the facts are the same, this court, in the case of Oklahoma City Electric, Gas & Power Co. v. Baumhoff, 21 Okla. 503, 96 Pac. 758, stated:

"The courts uniformly hold that an appellate court may review and reverse its former decision in the same case where it is satisfied that gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision."

We think this case comes squarely within the above rule, and it was error for this court to order the case dismissed.

We therefore conclude, first, as to the former opinion, the court should have construed the contract as a divisible contract. Second, that after determining certain questions were material, as to certain property covered by the policy, and the defendant should answer said questions, the court should have reversed the case, with instructions to permit the assured to answer said questions. Under the view we take of the case, the same was not prematurely brought, and it was error for this court to so hold.

The opinion rendered July 5, 1921, entitled George v. Connecticut Fire Ins. Co., as published in 200 Pac. 544, is adhered to with

the exception that the third paragraph of the syllabus as it appears therein should be withdrawn and not considered, as the facts stated in the third paragraph of the syllabus are not applicable in view of the conclusion we have reached that the cause of action was not prematurely brought.

For the reasons stated, the second petition for rehearing is denied.

PITCHFORD, V. C. J., and KENNAMER, ELTING, and NICHOLSON, JJ., concur.